[No. 14392.  Department Two.  May 7, 1918.]

EAST ABERDEEN LAND COMPANY, *Appellant,* v. GRAYS HARBOR COUNTY, *Respondent.*[1]

TAXATION—VALUATION—EXCESSIVE ASSESSMENT.  An assessment of tide lands, upon a zone system having reference to the value of the central unit, at $10,855, is excessive and not equal or uniform with other like property, where it appears that the tract consisted of 2.73 acres and had no practical value apart from the uplands, which were worth not to exceed, and could be bought for, $40 to $50 per acre, and other water front property was assessed at from $10 to $250 per acre.

Appeal from a judgment of the superior court for Grays Harbor county, Back, J., entered February 24, 1917, in favor of the defendant, in an action to secure a reduction of taxes, tried to the court.  Reversed.

*Morgan & Brewer,* for appellant.

*W. H. Tucker* and *J. E. Stewart,* for respondent.

CHADWICK, J.—This is an action brought by the appellant to compel the county of Grays Harbor to accept a tender of taxes upon certain tide lands bordering the shores of the Chehalis river.

The Chehalis river empties into Grays Harbor and for several miles from its mouth is navigable for ocean going vessels.  The cities of Hoquiam, Aberdeen and Cosmopolis are located on the river.  The tide lands affected by this suit are located across the river from the city of Cosmopolis, and from thence down the stream to a point at about the east boundary of the city

[1]Reported in 172 Pac. 876.

of Aberdeen. The uplands abutting the shore are unimproved logged-off land of the character known as tide land swamp. They have a potential value for factory and mill sites and are assessed at from $50 to $100 per acre.

Harbor areas were established in the Chehalis river in 1892. The inner harbor line was so established with reference to the meander line that several strips or threads of land were left between the inner line and the meander line. These the state has claimed as tide lands. It afterwards caused them to be surveyed in six tracts. They were offered for sale in September, 1912, at public auction, and were bought by appellant, the owner of the upland, for the sum of $735.69. Each strip varies in width, from a feather edge to one hundred feet at a point in one of the strips. The tracts are numbered and have a total area of 2.73 acres. They were assessed in 1913 and 1914 as shown below. The basis of actual valuation for 1914 is shown:

| Tract | Acres | Assessed 1913 | Assessed 1914 | Basis actual valuation |
|---|---|---|---|---|
| 41 | 57/100 | $340 | $4,335 | $15,210 |
| 36 | 17/100 | 240 | 2,040 | 24,000 |
| 37 | 93/100 | 140 | 1,785 | 3,838 |
| 27 | 48/100 | 320 | 1,190 | 4,962 |
| 28 | 7/100 | 45 | 400 | 11,428 |
| 26 | 51/100 | 135 | 1,105 | 4,334 |
|  |  | $1,220 | $10,855 |  |

The basis for valuation in each year was fifty per cent of the actual value. The tender made by appellant was based upon a value of $658.60 per acre. There is no testimony tending in any way to show that there had been any increase in the value of the lands.

The land was assessed under a theory or plan advanced by a deputy assessor, who selected a tract of tide land about midway of the water front of Aber-

deen and about two hundred feet deep, and then fixed zones running in either direction. Property was assessed by graduated valuations with reference to the value of the primary unit, eighty per cent being fixed on account of water frontage, and twenty per cent on account of area. The assessment is further defended on the ground that the tide lands were of greater value than other lands would be, because, as it is conceived, the owner of the tide lands would have, under the laws of this state, a preference right to lease the harbor area.

When this case was heard, the late Judge Morris was sitting with the court. After consultation, three of the judges, including Judge Morris, were of the opinion that the assessment had been made upon a fundamentally wrong basis, in that the zone system, if sustained by an arbitrary holding of value within the zone, was based upon the value of the central unit rather than upon the full fair cash value of the property taxed, which may be greater or less, depending entirely upon its situation and adaptability for commercial uses; and for the further reason that the assessor's theory of preference right to lease the harbor area could not be sustained, for the time has long since passed when a preferential right could be exercised. Two of the judges were of the opinion that the case should be reversed on the evidence of value, and it is upon this ground that the judgment will be questioned.

The consensus of opinion of no less than twelve of the most prominent property holders in Grays Harbor county is to the effect that the tide land tracts have no practical value apart from the uplands, and that the whole property, tide land and upland, when considered as one property, is not worth to exceed $40 to $50 per acre. It will be borne in mind that the upland is assessed on a valuation of $100.

The agent of the owner of the land, Mr. Heermans, testified that he has the whole tract, 450 acres of upland and the 2.73 acres of tide land, listed for sale at $25,000, less than $60 per acre, with no offers, and that "it can be purchased at a good deal less money than that, too. I am authorized to sell to any taker at these figures without calling upon the owner, and I am instructed to submit any other offer made."

The witnesses who were interrogated upon the subject say that the tide land tracts cannot be put to any use apart from the uplands, and that there was no demand for such lands at the time they were assessed; as one witness says: "These lands have a value if you consider the upland and the tide land and the harbor area together, that is, if there was any demand for it," and "I would consider it merely a nominal value. Good to hold up the owner of the inside in the hands of an unscrupulous person." This sentiment is concurred in by some of the other witnesses, and when the testimony of the deputy assessor is sifted, it is really the basis upon which he fixed values so greatly in excess of the values for market or for practical uses. He says:

"In making this assessment I made it under the theory or belief that the law permitted the adjacent owner to control the adjacent harbor area. I took into consideration that they were using the entire lot of thirty-eight and didn't confine themselves to the eighty-eight feet. (Ab. 89.) And in assessing all of this we took into account the fact, or supposed fact, that the adjacent owner had the preference right to lease the harbor area in front of it. (Ab. 90.)"

Counsel for respondent says:

"The tideland owner holds the key to the situation and values his lands accordingly. He has a special class of property because of its peculiar situation, and

inasmuch as he can demand a high price for such property he holds it accordingly.''

But, as applied to this case, the theory is not sound. If a third party owned the shoestrings along the river and it seemed reasonable that he would be able to sell them to an upland owner now or at some future time, it might be that an assessor could capitalize his hope for him, at least so far as the tax rolls are concerned, and that the courts would sustain his paper profits as a true, fair cash market value; but where the same party owns the two tracts, and there is no possibility of a sale to the upland owner so that he may get access to deep water, and the tide land strips have no value, potential or prospective, for building purposes, there is no possible ground upon which to base the fanciful values fixed by the assessor.

There is a popular tradition, launched in the years of the state's adolescence, that tide lands as distinguished from other land have some mysterious quality to which value attaches, and which will not brook the interference of doubt or argument; but, after all, tide lands are only lands. They may be of great value, or they may have little value. But all things are to be considered; the same elements which give value to one class of land will give it to another, and when land which for the purpose of classification is listed as tide land and sold by the state, it is no longer to be regarded as of a class but as property, and to be valued according to its fair cash value.

This case is very much stronger upon its facts than is the case of *Grays Harbor Construction Co. v. Grays Harbor County*, 99 Wash. 184, 168 Pac. 1138, where we refused to sustain an assessment based upon a value more than three times greater than the salable value of the property.

It is insisted that the judgment should be sustained because it is shown that the Standard Oil Company bought a tract, one and one-half acres, of tide lands and about two acres of upland, having a frontage of 575 feet, for $7,500, in 1914. The tide lands were assessed at $2,125, and the upland at $1,200. It may be that the property was well worth that sum, and that other tracts would sustain a greater value, but the law will not tolerate a valuation fixed by comparisons, where the testimony overwhelms that the particular tracts in controversy have no such value. But we find no argument in these figures. The tide land sold to the Standard Oil Company, was assessed upon a valuation of $4,250 per acre. Let this compare with the assessment of appellant's property, which is confessedly less valuable.

| | | | | | | |
|---|---|---|---|---|---|---|
| Tract | 41 | is assessed at | $15,210 | per acre | | |
| " | 36 | " | " | " | 24,000 | " " |
| " | 37 | " | " | " | 3,838 | " " |
| " | 27 | " | " | " | 4,962 | " " |
| " | 28 | " | " | " | 11,428 | " " |
| " | 26 | " | " | " | 4,334 | " " |

And the assessment of other water front property not shown to be less valuable than appellant's property at from $10 to $250 per acre.

The valuation is not sustained by the testimony, nor is the assessment equal and uniform with other like property. *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707; *Spokane & Eastern Trust Co. v. Spokane County,* 70 Wash. 48, 126 Pac. 54, Ann. Cas. 1914B 641; *Savage v. Pierce County,* 68 Wash. 623, 123 Pac. 1088; *State ex rel. Oregon R. & Nav. Co. v. Clausen,* 63 Wash. 535, 116 Pac. 7.

Tender having been made upon a valuation of $630 per acre, which is far above the fair cash value of the

property as shown by the testimony, the case will be reversed with instructions to enter a judgment in favor of appellant.

ELLIS, C. J., and MOUNT, J., concur.

HOLCOMB, J., concurs in the result.