[No. 17187.   Department Two.   October 10, 1922.]

EDWARD C. FINCH, *Respondent,* v. GRAYS HARBOR
COUNTY, *Appellant.*[1]

TAXATION (12)—VALUATION—REAL PROPERTY—METHOD OF ASSESS-
MENT. In assessing unplatted unimproved lands, the county assessor
may not consider the value that such lands would have because
available for platting into lots and blocks, in view of Rem. Comp.
Stat., § 11121 requiring land to be assessed at the fair market value
at the time of the assessment.

TAXATION (210) — ASSESSMENT — EXCESSIVENESS — SPECULATIVE
VALUE—EVIDENCE—SUFFICIENCY. Upon an issue as to the value of
land assessed for taxes, it is competent to show what similar land,
similarly situated, sold for about four months after the time the
assessment was made, and it is not objectionable as evidence of a
forced sale, where it had been taken by a bank in payment of debt
and was sold by the bank after being offered for a long time and
finally sold for all the bank could get.

SAME (209)—EXCESSIVE ASSESSMENT—EVIDENCE—ADMISSIBILITY.
In an action to reduce an assessment on unplatted land, the county
may not show that it was not assessed higher than land in the
vicinity which had been platted.

SAME (208)—EXCESSIVE ASSESSMENT—COMPLAINT. A complaint
in an action to reduce the assessment on ten parcels of land, alleging
the total value and assessment, is not demurrable for failing to
allege the value and assessment upon each parcel separately, because
Rem. Comp. Stat., § 11122, requires that they be so assessed; where
under the evidence, it is a simple matter of calculation as to the
proportionate valuation to be placed on the several parcels.

TRIAL (31)—ORDER OF PROOF—REOPENING CASE. It is not error to
reopen the case for further evidence, while defendant was arguing
for judgment upon the ground that plaintiff had not pleaded or
proved a cause of action.

Appeal from a judgment of the superior court for
Grays Harbor county, Simpson, J., entered December
15, 1921, upon findings in favor of the plaintiff, in an
action to enjoin the collection of a tax, tried to the
court.   Affirmed.

[1]Reported in 209 Pac. 833.

*George Acret* and *R. A. Lathrop,* for appellant.
*E. E. Boner,* for respondent.

HOLCOMB, J.—This is an action to enjoin the collection of taxes for the year 1920, and to compel the acceptance of a less amount than that assessed in satisfaction of the tax for 1920, and upon the same valuation for the year 1921, ensuing.

The assessor placed an assessed valuation on the lands involved in the action in the sum of $31,605, presumably fifty per cent of the fair value in money of the lands. According to the assessor, the full value of the lands would be $63,210. The tax levied for the year 1920 was 81.23 mills, and the amount of taxes accruing from the assessment claimed by the county amounts to the sum of $2,567.

The respondent claims and alleges that the full and fair cash value of the lands in question at the time of the assessment did not exceed the sum of $15,500, and that the assessed valuation of fifty per cent thereof was the sum of $7,750, which should have been assessed against the land.

Prior to the commencement of the action, respondent tendered to the county treasurer the sum of $629.53, being 81.23 mills upon $7,750, in full payment of all taxes on all of the lands in question for the year 1920. The tender was acknowledged by the treasurer and refused.

The case was presented, tried and decided in respondent's favor on the theory that the valuation placed on the lands by the assessor was so grossly excessive as to amount to constructive fraud. The trial judge viewed the lands during the trial.

Twelve assignments of error are urged by the appellant county, most of which devolve upon the findings of the trial court as to the excessive valuation.

The first error urged is that the court erred in finding that the assessor could not take into consideration, in fixing the market value of the lands as of March 1, 1920, any use to which the land could be put by way of cutting it up into small tracts and selling it off at a large figure.

The case of *Hillman's Snohomish County Land & R. Co. v. Snohomish County,* 87 Wash. 58, 151 Pac. 96, is cited by appellant as showing that unplatted land which is available for platting is as valuable before being platted as after. That is not the case. In the *Hillman* case, *supra,* the lands had been platted and most of them sold as platted lots and blocks. In that case the plaintiff contended that as bare unimproved lands under its ownership they were worth no more than the surrounding unplatted, unimproved lands, and should have been assessed at the same rate. The opinion stated that the purpose of platting land is to add to its value, its salability, its market price; and it was pointed out that, in that case, not only was that generally true, but it was actually there shown to be true that it did add to the value and the lands so sold had many times the value of unplatted lands in the same neighborhood.

*Washington Union Coal Co. v. Thurston County,* 105 Wash. 208, 177 Pac. 774, 2 A. L. R. 1546, is also cited as in point. In that case the lands were assessed as coal lands. Additional value was placed upon them because of the mineral that lay beneath the surface. It was contended that the lands should have been assessed as ordinary wild land. The facts showed that the assessor had made a thorough examination and that the lands contained coal. It was held that he was justified in classifying the lands as coal lands and assessing them accordingly.

*First Thought Gold Mines Ltd. v. Stevens County,*
91 Wash. 437, 157 Pac. 1080, cited by appellant, is not
in point. In that case the land was assessed as a gold
mine, when in fact it was a prospect. The court re-
duced the valuation.

In this case the lands are shown to be uncleared for
the most part, unimproved, unfenced, swamp and tide
lands, although incorporated within the city limits of
Aberdeen. It is urged that the dominant value of such
lands is that to which they are capable of being de-
voted. Eminent domain cases are cited where we have
held in effect that, if land has a peculiar value for some
determinable purpose, testimony to that effect is ad-
missible, even though it be not then used for that pur-
pose, and there be no present intention to use it for
that purpose. *Seattle, Port Angeles & Lake Crescent
R. v. Land,* 81 Wash. 206, 142 Pac. 680, *Ham, Yearsley
& Ryrie v. Northern Pac. R. Co.,* 107 Wash. 378, 181
Pac. 898; 10 R. C. L. 128, § 112; Lewis, Eminent Do-
main (2d ed.), vol. 2, § 479.

While that is the rule in eminent domain cases as to
the market value, it must be remembered that there the
land is being taken forcibly from the owner and the
owner is entitled to the utmost value of his land, to-
gether with damages for the taking. In assessing for
taxation, we are controlled by a statute, Rem. Comp.
Stat., § 11121, in part as follows:

"All property shall be assessed at not to exceed fifty
per cent of its true and fair value in money. . . . .
He (the assessor) shall value each article or descrip-
tion of property by itself, and at such sum or price as
he believes the same to be fairly worth in money at the
time such assessment is made. The true cash value of
property shall be that value at which the property
would be taken in payment of a just debt from a solvent
debtor. In assessing any tract or lot of real property,
the value of the land, exclusive of improvements, shall

be determined; also, the value of all improvements and structures thereon, and the aggregate value of the property, including all structures and other improvements, excluding the value of crops growing on cultivated lands.''

Under this statute, the fair market value, to be determined at the time the assessment is made (March 1, in every even numbered year), is determined to be the true cash value of the property, or the value at which the property would be taken in payment of a just debt from a solvent debtor. That, of course, means that property shall be assessed at its fair market value at the time the assessment is made. *Hillman's* case, *supra.*

It does not mean, however, that a value can be placed upon it by the assessor which is purely speculative, and that asserted to be the fair market value. A case in point is that of *Case v. San Juan County,* 59 Wash. 222, 109 Pac. 809, where the assessor placed a value of approximately $50,000 on property ''because certain parties agreed to pay $50,000 for the property, provided the owners would spend six or seven thousand dollars in development work and prove and demonstrate that there was sufficient limestone to supply a cement plant of the capacity of one thousand barrels per day for twenty-one years.'' We there held that the cash value of the property, according to the testimony, was not to exceed $15,000, and held that theoretical value based upon possible conditions was not a proper value for assessment purposes, and that such assessment constituted constructive fraud.

In this case the assessor insists that his value is fair because these lands lie within the city limits of Aberdeen, and that they can be platted and subdivided into small tracts and sold as lots or small tracts. On the contrary, the evidence is overwhelming that even the

upland of these lands is more or less covered with brush and small timber, and the remaining lands are tide lands. Even the upland is frequently covered by the tides, and is full of swamps and small creeks. The evidence is also convincing that it would require from $250 to $500 to clear the uncleared portion of the land, and that it would not then be worth as much as it cost to clear it. That much of the tide land cannot be drained, and can only be reclaimed by a system of diking and drains. Diking and draining would cost not less than $100 per acre. The upland is not even fit for farming, but a part of it is fit for pasturage. The valuation of such lands as waterfront property is very doubtful and wholly speculative, for the reason that there has been no demand for such property in Aberdeen for a number of years, and the value of such property has steadily declined.

Lands of the same character in that locality had been platted and subdivided by the state into tracts not larger than five acre tracts, placed upon the market and attempted to be sold a few years before. The small tracts could not be sold, and the state vacated the subdivision and plat.

In *Northern Pac. R. Co. v. Benton County*, 87 Wash. 534, 151 Pac. 1123, where a decree reducing the valuation was further reduced by this court, it was held that, where it appears that a large body of land was nothing but dry grazing land, practically valueless and of no sale or market value, worth for grazing not to exceed $13 per section, and the assessed value being upon the assumption that the lands were being held for the "particular and definite purpose of sometime being reclaimed by irrigation," which did not raise it to the probable value at that time, was merely excessive.

So it seems here, while there might be the possibility of great value in the indefinite future, the great

weight of the evidence is that the present value, at the time the assessment was made, was not to exceed $15,500, while the assessor's valuation was four times that amount.

We must concur in the view of the trial court that the valuation was grossly excessive to the extent that it found in the decree.

Complaint is made that the trial court held that appellant's witnesses did not show reasonable qualifications, and that respondent's witnesses were thoroughly qualified. That is not what the court found in finding No. 6, complained of, but did find as follows:

"The witnesses called by the plaintiff in the case were practically all real estate men, business men who had had a great deal of experience in buying land, and owners of large tracts of land in and around Aberdeen, and well qualified to testify as experts on the value of the land. The witnesses for defendant were most of them business men in Aberdeen, but none of them with the exception of the assessor and a Mr. France had had very much experience in buying and selling real estate, and did not know the value which had been placed on the property such as that owned by the plaintiff. They were only qualified to testify as experts because they knew in a general way what the property was worth, and most of them owned some property in the neighborhood of the land in question; but they were not men who had had a large experience in the handling of real estate, and did not follow the sales, and were not so thoroughly familiar with values as the witnesses who appeared for plaintiff."

An examination of the testimony of the witnesses as shown in appellant's abstract bears out every observation made by the trial court. The court did not find, as contended, that witnesses for respondent were thoroughly qualified, or that the witnesses for appellant were not qualified. He simply found that the witnesses for respondent were, on the whole, better quali-

fied, and their evidence more credible and reliable than the evidence of the witnesses for appellant, with which we fully agree.

Error is claimed also in that the court fixed the value upon the land in question solely as farm property, and determined this value largely from the cost of clearing the land, and by the fact that a certain other body of land known as the "Book Ranch," which was partly cleared and is about the same kind of land as the land in question, had recently sold at a less sum per acre.

The land known as the "Book Ranch" was sold about the first of July, or about four months after the time the assessment should have been placed on the land in question, for a less sum per acre than respondent claimed to be the value of his land. Respondent showed that the Book Ranch was mostly cleared, reclaimed, fenced, cultivated, and used as farm property. It is otherwise about the same character of land as the land of respondent. The evidence was certainly competent, as all the authorities agree that sales of similar land, or lands similarly located, at about the same time, and not under forced sale, may be shown as some evidence of the market value of lands in question. It is claimed that the Book Ranch sale was a forced sale, and for that reason should not be so much relied upon; but it does not so appear. It does appear that it had been taken by a bank in payment of some debt, and had been sold by the bank after being offered for a long time, and was finally sold for all that the bank could get.

It is also claimed that the court erred in refusing to permit appellant to show that respondent's land was not assessed higher than other similar property in the vicinity. What appellant attempted to do was to show that lands which had been platted into lots and blocks

and into small tracts in that vicinity had been assessed at about the same rate per acre that respondent's land was assessed. That was not a fair test under the decision in the *Hillman* case, *supra*.

It is also contended that respondent's complaint did not state a cause of action. This contention is based upon the fact that the allegations of the complaint were that there were ten descriptions of land assessed, and that the assessor had valued these ten parcels of land at $63,210, assessing them on a fifty per cent basis at $31,605; that no attempt was made to show either the actual value or the assessed valuation of a single one of these ten tracts of land. The statute, Rem. Compiled Stat., § 11122, is cited to the effect that lots and other subdivisions of a section shall be assessed separately and valued separately for assessment. Each lot is given a separate place in the plat and description book in its numerical order, and the number of acres in each lot shown. The statute further provides that when the assessed valuations are changed, the equalized valuation must be extended and shown by items. It is contended that there are in this suit three lots of tide lands and mud flats, two lots of higher tide lands, and a quarter quarter section (40 acres) of a certain section, and four forties or quarter quarters in another quarter of the same section. It is asserted that this gives ten descriptions which may be reduced to seven, and that the statute, Rem. Comp. Statutes, § 11110, requires that the valuation of each of these separate tracts or parcels of land shall be entered opposite each description of the property.

However that may be, the assessment was shown, as alleged in respondent's complaint, upon each forty-acre unit or fractional lot of land. The evidence showed the value placed upon each subdivision by the

acre. The tender was made of what respondent alleged to be sufficient to pay all of the taxes upon a just valuation upon all of the tracts. Appellant contends that the taxing officers cannot determine upon which particular tract the valuation was reduced, how much for each description. It is evident that it was reduced proportionately to the allegations of respondent in his complaint, and the evidence as to the value of each tract, and that valuation proportionate to the assessed valuation can be easily determined by the taxing officers. That is a simple matter of calculation, segregation and apportionment.

One other error is claimed by appellant: that the court erred in allowing respondent to reopen his case for further proof while the defendant was arguing for judgment upon the ground that respondent had neither pleaded nor proved a cause of action. Respondent was merely allowed to prove payment of all previous taxes. We find no merit in this contention.

This is a stronger case than that of *Grays Harbor Const. Co. v. Grays Harbor County,* 99 Wash. 184, 168 Pac. 1138, and very much like *East Aberdeen Land Co. v. Grays Harbor County,* 102 Wash. 172, 172 Pac. 876, and the case against San Juan county, *supra.* It is unnecessary to continue the discussion or cite other cases.

The judgment was right and is affirmed.

Parker, C. J., Main, Mackintosh, and Hovey, JJ., concur.