[No. 26014. Department One. December 14, 1936.

GRAYS HARBOR PACIFIC RAILWAY COMPANY, *Respondent,* v. GRAYS HARBOR COUNTY *et al., Appellants.*

SAGINAW LOGGING COMPANY, *Respondent,* v. GRAYS HARBOR COUNTY *et al., Appellants.*[1]

[1]Reported in 62 P. (2d) 1347.

*Paul O. Manley, E. W. Mathewson, R. G. Sharpe,*
and *E. W. Anderson,* for appellants.

*Karl R. Bendetson,* for respondents.

BLAKE J.—For some time prior to 1929, Saginaw
Logging Company owned and operated a logging road
between Brooklyn, in Pacific county, and Vesta, in
Grays Harbor county, where it connected with a
branch line of the Oregon-Washington Railroad &
Navigation Company. Desiring to extend its logging
road from Vesta to Preachers Slough, in Grays Har-
bor county, it caused to be organized Grays Harbor
Pacific Railway Company as a toll logging railroad
under chapter 82, Laws of 1905, p. 161 (Rem. Rev.
Stat., § 8395 [P. C. § 4692] *et seq.*). All shares of
stock of the latter (except qualifying shares held by
directors) were owned by the former.

In 1929, the Grays Harbor Pacific Railway Com-
pany commenced construction of its line. By the end
of 1930, it had completed construction of 3.61 miles of
main line between Preachers Slough and Bridges, with
2.09 miles of sidings at those points. It had also prac-
tically completed construction of the grade, bridges
and trestles between Bridges and Vesta—a distance of

about ten miles. This grade paralleled the line of the Oregon-Washington Railroad & Navigation Company.

Sometime during the year 1930, the Grays Harbor Pacific Railway Company acquired trackage rights over the line of the Oregon-Washington Railroad & Navigation Company between Bridges and Vesta. It also acquired trackage rights over the line of its parent company (Saginaw Logging Company) between Vesta and Brooklyn. As a result of the acquisition of these trackage rights, the Grays Harbor Pacific Railway Company abandoned construction of its own line. In the meantime, it had acquired a machine shop in Pacific county and had purchased the following equipment: One second-hand ninety-four ton locomotive, a tender, 102 log flat cars, and two second-hand cabooses. These, the abandoned grade between Bridges and Vesta, the machine shop, and the 5.88 miles of main line and sidetracks between Bridges and Preachers Slough, were the only physical properties owned by the Grays Harbor Pacific Railway Company. The initial cost of these properties, as shown by the company's annual report to the tax commission for the year 1930, was approximately $365,000.

Acting on the theory that the Grays Harbor Pacific Railway Company was a common carrier, the tax commission fixed the valuation of its properties as a *system*, just as in the case of other common carriers. In so doing, the initial cost of the properties was used as a base. It appears that, ordinarily, in fixing a *system* valuation, the commission takes into consideration reproduction cost less depreciation, earnings, and the value of stocks and bonds when sold on the market. Taking all these factors into consideration, the commission arrives at the *fair market value* of the *system*.

In the case of the Grays Harbor Pacific Railway Company, there were no bonds or stock on the market,

and, since earnings were negligible, the value was fixed, as admitted by one of appellants' witnesses, practically on the first factor alone—reproduction cost less depreciation. The actual value of the system, as finally equalized under this method, for the year 1932, was $148,000—$78,000 allocated to realty, and $70,000 to personalty. The Grays Harbor Pacific Railway Company paid taxes, levied for that year, under protest, and brought this action to establish what it conceived to be the fair valuation of the property and to recover the amount of taxes paid in excess of such as might be due under the value it alleged should be established.

In 1933, the equalized value of the property, as fixed on the tax commission's method of *system* valuation, was $110,000—$40,000 allocated to realty and $70,000 to personalty. Saginaw Logging Company, having taken over the properties of the Grays Harbor Pacific Railway Company, paid, under protest, taxes levied on the personal property on the basis of such valuation, and brought action to establish what it conceived to be the fair valuation of the personal property, and to recover the amount paid in excess of the amount due on the basis of such fair valuation as it claimed should be established.

The two actions were consolidated for trial. Judgment was entered substantially in accordance with the prayers of the complaints. Grays Harbor and Pacific counties appeal from the judgment so entered.

The court made findings of fact, the following of which we think are conclusivey established by the evidence: That the Grays Harbor Pacific Railway Company is an ordinary logging railroad "like other ordinary logging railroads in Grays Harbor and Pacific counties;" that its sole object and purpose were to haul forest products of its owner to tidewater "as a

necessary incident of logging and having no further object, use or purpose as a railroad upon cessation of logging by its owner."

Under these facts, the Grays Harbor Pacific Railway Company was not a common carrier. *State ex rel. Silver Lake R. & L. Co. v. Public Service Commission,* 117 Wash. 453, 201 Pac. 765, 203 Pac. 3.

■ The tax commission, in fixing the valuation of the company's property on the theory that it was a common carrier, proceeded on a fundamentally wrong basis. This, in itself, is not sufficient to justify the intervention of the courts at the instance of the taxpayer. But if the result of such procedure is an over-valuation which is palpably exorbitant and greatly disproportionate to valuations of property of like character in the same taxing district, the court will intervene and revalue the property. *Templeton v. Pierce County,* 25 Wash. 377, 65 Pac. 553; *Hillman's Snohomish County Land & R. Co. v. Snohomish County,* 87 Wash. 58, 151 Pac. 96; *First Thought Gold Mines v. Stevens County,* 91 Wash. 437, 157 Pac. 1080; *Finch v. Grays Harbor County,* 121 Wash. 486, 209 Pac. 833, 26 A. L. R. 644. The gist of the rule is stated in the case of *First Thought Gold Mines v. Stevens County, supra,* as follows:

"It is the established law in this state that courts will grant relief from a grossly inequitable and palpably excessive over-valuation of real property for taxation as constructively fraudulent, even though the assessing officers may have proceeded in good faith, and this without regard to the action of the board of equalization."

■ The appellants did not even attempt to justify, in the light of the rules laid down in these cases, the valuations placed upon the properties by the tax commission. Appellants did attempt, by computation, to justify the tax commission's valuations on the basis of

"net railway operating income." But the computations are not at all convincing that valuations so arrived at represent the fair market value of the properties. On the other hand, the respondents demonstrated by their evidence that the challenged valuations were grossly excessive and utterly disproportionate to valuations placed upon properties of like character in Grays Harbor and Pacific counties.

The trial court found that the fair valuation of the real property of the Grays Harbor Pacific Railway Company in 1932 was $34,760, and of its personal property $41,990. For the year 1933, it found the value of the personal property to be $37;386. It further found: "That said fair actual values as aforesaid are the values placed upon like property similarly situated and are based upon the market values of said property." This finding is based upon undisputed evidence.

We understand appellants to ask us to infer that there was no inequality in the valuations placed upon respondents' properties and the valuations placed upon other properties of like character in Grays Harbor and Pacific counties, because respondents' properties were in the *jurisdiction* of the tax commission and the other properties were in the *jurisdiction* of the county assessors. In support of this proposition, appellants quote from *Henderson v. Pierce County,* 37 Wash. 201, 79 Pac. 617, as follows:

"The evidence here shows not only a gross overvaluation of the respondent's property, but it shows a gross overvaluation, we think, when compared with other property of like kind within the assessor's jurisdiction."

We do not think the language, either in terms or in context, warrants the interpretation appellants ask us to place upon it. The fact that two different taxing

agencies of the state are called upon to fix valuations, under certain circumstances, of properties of like character in the same taxing district, does not justify one agency in fixing valuations grossly disproportionate to valuations fixed by the other. To hold otherwise would be subversive of the fundamental theory of equality in taxation.

Judgment affirmed.

MILLARD, C. J., MAIN, STEINERT, and GERAGHTY, JJ., concur.

[1]Reported in 62 P. (2d) 1364.