[No. 31033. Department One. January 18, 1950.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK M. McVEIGH, *Appellant.*[1]

[1]Reported in 214 P. (2d) 165.

*Henry Clay Agnew,* for appellant.

*Charles O. Carroll* and *Frank Harrington,* for respondent.

DONWORTH, J.—The defendant was charged by information with the crime of arson in the first degree as follows:

"He, the said FRANK M. McVEIGH, in the County of King, State of Washington, on or about the 1st day of January, 1948, in the night-time wilfully did set on fire a building located at 4228 University Way, in the City of Seattle, said county and state, the same being a building wherein a human being then and there was present, and said fire being manifestly dangerous to human life;

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington."

Upon a trial, the jury returned a verdict of "not guilty" of the crime of arson in the first degree but "guilty" of the crime of an attempt to commit arson. The judgment recited that the defendant had been convicted of the crime of attempted arson in the first degree and he was sentenced to the state penitentiary for a maximum term of not more than twenty years. From judgment and sentence entered on the verdict, the defendant has appealed.

The evidence produced by the state showed that appellant was the lessee of a certain store on University way in Seattle. Above the store were several apartments, which were occupied at the time of the fire. Appellant had sublet

this store several months prior to the fire, but the sublessee had turned the premises back to him and he was obligated to pay the rental to the owner of the building, although no business had been conducted in the premises for more than four months.

About ten p. m. on January 1, 1948, one of the state's witnesses and his wife were passing the store when they observed a man (admittedly appellant) coming out of the store and "fiddling" with the lock. They saw a fire inside the store and called appellant's attention to it. He acted amazed and said, "What fire?" The witness and appellant then entered the store, and appellant disappeared toward the rear of the room into the smoke and the witness did not see him again. The fire department was called, and the fire was extinguished in less than one minute by one fireman using less than five gallons of water from an extinguisher. A bottle of inflammable cleaning solvent tipped on its side and eight or ten match folders and some burned matches were found inside the store, and the odor of cleaning solvent was very noticeable in the debris.

There had been a recent fire in a garbage can located outside of the store in the rear of the building, and upon a lumber pile near the garbage can were newspapers which had been saturated with cleaning solvent.

The counter in the store was charred, but was subsequently used by a new tenant without any substantial repairs. There was a charred mark on the linoleum floor covering where the fire had occurred.

Appellant took the stand and testified that, some three or four years prior to the time in question, he had been treated for alcoholism and thereafter had abstained from the use of alcohol for several years. On the day of the fire, he went to the store for the purpose of cleaning up the premises preparatory to resuming business therein. He had been drinking that day and had a bottle of whisky with him. He became intoxicated to the extent that he did not know what happened. He further testified that he had no intention of starting a fire, and that if one were started it was purely

accidental. Appellant's wife testified as to his extremely intoxicated condition when he arrived home after the fire. Appellant's physician corroborated his testimony as to his having been treated for alcoholism and his loss of memory when drinking heavily.

With this brief review of the evidence, we will consider appellant's assignments of error.

The following assignments are relied upon by appellant: (1) the refusal to grant a new trial for errors of law occurring at the trial, to-wit: (a) the improper questioning of a witness in the absence of appellant while the jury was viewing the premises, and (b) in allowing cross-examination of the accused as to his having previously been in trouble; (2) the sentencing of the defendant on a verdict of guilty of "Attempt to Commit Arson"; (3) the sentencing of appellant to twenty years imprisonment. These assignments of error will be discussed in the above order.

Appellant complains of the questioning of a fire inspector (who was a witness at the trial) by the deputy prosecuting attorney during the time the jury was viewing the premises. Neither appellant nor his attorney was present at this time.

In support of his motion for a new trial, appellant produced the affidavit of the present occupant of the premises, which was, in part, as follows:

"Upon viewing the rear of the premises in the alley the fireman who accompanied the jury, whose name I am informed is McGill [McGee], said in substance 'the garbage can was here and the flames went way up to here—pointing.'

"That about twenty feet from where the garbage can was placed Northerly on the alley and at a place about fifteen feet above the ground there was a charred place on the wall which had been caused by a short in the electric wiring and not by any fire in the garbage can. That the jurors were present when said fireman made the statement aforesaid."

In his counter affidavit, the fire inspector denied that he had pointed out any charred place on the wall or that he had made any statement as to how high the flames had gone. However, he admitted answering at least one question by

the deputy prosecuting attorney. He stated in his affidavit, in part:

"Affiant further states that upon an inquiry from Frank Harrington as to the location of the garbage can he did state the approximate location of the garbage can at the rear of the premises, at the time evidence of fire was discovered in said garbage can on the first day of January, 1948; affiant further states that at the time he indicated the position of the garbage can, many members of the jury were in the vicinity, and the bailiff was in the vicinity."

Considerable testimony was admitted at the trial relating to the fire in the garbage can which was situated just outside the rear door of the premises. This evidence tended to show that the contents of the garbage can consisted of newspapers and debris saturated with cleaning solvent which had been placed in it by some person. In submitting the case to the jury, the trial court struck out all testimony relating to the garbage can fire and told the jury to disregard it for the reason that it was not within the crime charged.

Our problem is to determine whether the questioning of the fire inspector during the viewing of the premises violated appellant's rights under Art. I, § 22, of the state constitution (as amended by the 10th amendment), which guarantees an accused person the right "to meet the witnesses against him face to face."

Our statute relating to permitting the jury to view the premises (Rem. Rev. Stat., § 344 [P.P.C. § 99-43]) provides:

"Whenever in the opinion of the court it is proper that the jury should have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order the jury to be conducted in a body, in the custody of a proper officer, to the place, which shall be shown to them by the judge, or by a person appointed by the court for that purpose. *While the jury are thus absent, no person other than the judge, or person so appointed, shall speak to them on any subject connected with the trial.*" (Italics ours.)

As has been several times held by this court, the purpose of permitting the jury to view the premises involved in any case, either civil or criminal, is to enable the jury to

better appreciate and understand the evidence produced before them in open court. That it is improper to permit any evidence to be offered during a view of the premises is made clear by our decision in *State v. Much,* 156 Wash. 403, 287 Pac. 57.

"Although other courts may have held to the contrary, this court is committed to the principle that a view of the premises is not a part of the trial. *In State v. Lee Doon,* 7 Wash. 308, 34 Pac. 1103, we held that the jury does not view the premises for the purpose of obtaining evidence; that no evidence is allowed to be offered there to the jury under any rules or any circumstances; they simply view the premises for the purpose of enabling them to make an intelligent application of the testimony presented at the trial. Clearly, there was no confrontation of witnesses against appellant unconstitutionally denied him by such mere view."

See, also, *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 614, 131 P. (2d) 736, 741.

We are of the opinion that in the case at bar appellant's right to be confronted by a witness against him was unconstitutionally denied him when the fire inspector answered the question of the deputy prosecuting attorney under the circumstances described in the inspector's affidavit. The questioning of one of the state's principal witnesses in the absence of appellant was highly improper and should not be permitted upon a retrial of the case.

Whether the subsequent instruction of the court that the jury should disregard all evidence regarding the garbage can fire could or did cure this violation of the constitutional rights of the accused, we do not find it necessary to decide, because this case must be remanded for a new trial for another reason presently to be noticed.

Appellant next complains that the deputy prosecuting attorney was permitted upon cross-examination to ask him whether he had gotten into any trouble previously due to drinking and blacking out. On his direct examination, appellant testified:

"Q. What is the effect on your mind when you get under the influence of liquor? A. Well, I have a tendency to black-out and it is very difficult to recollect or recall any of the

actions I have been doing or have done while under the influence of liquor."

On cross-examination, he was asked about having at all times had this tendency to black out and forget after he used intoxicating liquor. He testified that he had joined the Eagles Lodge in Seattle without knowing at the time he had done so. The cross-examination then proceeded as follows:

"Q. Did you ever forge a check and procure several hundred dollars while under the influence of liquor and then forget it? MR. AGNEW: Objection. It is an improper question and is prejudicial. THE COURT: I think so and I will sustain the objection. You can ask the question according to the proper form. MR. AGNEW: I ask the jury be instructed to disregard it. THE COURT: The jury is so instructed. MR. AGNEW: I ask for a mistrial on the misconduct of counsel. The prejudice cannot be overcome. THE COURT: Denied. Q. Have you ever gotten in trouble before, Mr. McVeigh? MR. AGNEW: The same objection, the same misconduct and the same motion for mistrial. THE COURT: He didn't finish the question. MR. HARRINGTON: I am not referring to the same trouble. Q. Have you got into any trouble before due to drinking and blacking out. MR. AGNEW: The same objection. THE COURT: Overruled. Q. Have you? A. Will you repeat the question? Q. Have you got into any trouble before due to drinking and blacking out? A. Yes. Q. On how many occasions? A. On one. Q. On only one? A. Only one, yes. Q. When was that? A. That was in '37."

█ In our view, the conduct of the deputy prosecuting attorney was highly prejudicial to the rights of appellant. It is to be noted that appellant was not asked whether he had ever been convicted of forging a check and procuring several hundred dollars, nor was any certified copy of any record of conviction exhibited. He was first asked if he had ever forged a check and procured several hundred dollars while under the influence of liquor and then forgotten it. His objection to this question was sustained, and the jury was instructed to disregard the question. After a motion for a mistrial on the ground of misconduct of counsel was denied, appellant was asked whether he had ever gotten into trouble before due to drinking and blacking out. This ques-

tion was likewise improper, but, after the objection of appellant's counsel was overruled, the question was repeated and appellant was compelled to answer that it had happened to him only on one occasion, which was in 1937.

The effect of the portion of cross-examination above quoted was to clearly leave in the jury's mind the implication that the trouble which appellant was compelled to admit having gotten into in 1937 was the same transaction concerning which he was asked and to which objection was sustained, to-wit: whether he had ever forged a check and procured several hundred dollars while under the influence of liquor and then forgotten it.

While it is proper to ask any witness, for the purpose of testing his credibility, whether he be a defendant in a criminal case or not, whether or not he has been convicted of a specific crime, it is not permissible to ask him concerning prior acts of misconduct which have not resulted in a conviction by a court of law.

The applicable decisions of this court are reviewed in *State v. Stevick*, 23 Wn. (2d) 420, 161 P. (2d) 181, where it was said:

"This court has on frequent occasions passed upon questions concerning the conduct of counsel in civil and criminal cases. In *State v. Montgomery*, 56 Wash. 443, 105 Pac. 1035, a conviction was reversed because of questions and statements asked by the prosecuting attorney.

"In *State v. Devlin*, 145 Wash. 44, 258 Pac. 826, the prosecuting attorney put the fact before the jury that the defendant's picture was in the 'rogue's gallery.' This court reversed the conviction of the defendant upon the ground that the evidence was of a prejudicial nature.

"In *State v. Carr*, 160 Wash. 83, 294 Pac. 1016, this court held that it was reversible error for the prosecuting attorney to persistently disregard rules of court and attempt, by improper questions, to bring before the jury incompetent and irrelevant matters.

"In *State v. Tweedy*, 165 Wash. 281, 5 P. (2d) 335, a judgment of conviction was reversed because of the conduct of the prosecuting attorney in asking repeated questions concerning the whereabouts of a witness, after the trial court had ruled against the admission of the evidence.

"In *State v. Sang,* 184 Wash. 444, 51 P. (2d) 414, reversal was caused because of the statement of the deputy prosecuting attorney that the defendant had 'a general reputation as a gambler.'

"This court, in *State v. Smith,* 189 Wash. 422, 65 P. (2d) 1075, held as reversible error the action of the state's attorney in attempting to show that the defendant had left the Marine Corps under circumstances detrimental to him, after the trial court had held the evidence inadmissible.

"In *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691, the defendant was asked on cross-examination if he made his living by stealing automobiles and 'holding up' people. Judgment was reversed because of the conduct of counsel in asking the question to which we have just referred. In passing, this court stated:

" 'Evidence of particular acts of misconduct which tends to disgrace a witness cannot be elicited from such witness on cross-examination for the purpose of impeaching him, any more than it can by the testimony of other witnesses.'

"A study of the foregoing cases demonstrates that reference to specific acts of misconduct cannot be made to expose the witness to ridicule or to discredit him in the minds of the jury. The conduct upon which we have reversed judgments in the above cases was mild compared to the actions of the state's attorney in this case. By repeated questions the deputy prosecuting attorney accused appellant of being a prostitute. Not only that, but he made the same accusation concerning one of appellant's witnesses. The state did not attempt to prove former convictions indicated by the questions. In this day in which criminal records are quite complete and available to all prosecuting officials, there is no excuse for asking questions concerning former convictions at random."

The state contends that this cross-examination of appellant was proper because it had a bearing upon his ability to form a criminal intent. Its theory seems to be that, because of his having committed forgery in 1937 while under the influence of liquor, appellant should have known that if he drank intoxicants he would black out mentally and commit some crime such as arson. However, we see no logical connection between an intent to commit forgery in 1937 and an intent to commit arson in 1948, even assuming

appellant was intoxicated on both occasions to the point where he could remember nothing afterwards.

A new trial must be granted because of the improper cross-examination of appellant.

The next error assigned is that the verdict is void, in that it finds appellant guilty of the crime of an attempt to commit arson without specifying whether it be first or second degree arson.

In its instructions, the court, in effect, told the jury that they might convict appellant of arson in the first degree as charged in the information and as defined in Rem. Rev. Stat., § 2572 [P.P.C. § 113-25], or they might convict him of an attempt to commit arson in the first degree. The form of the verdict which was given to the jury by the court contained two paragraphs, the first to enable the jury to find appellant either guilty or not guilty of the crime of arson in the first degree, and the second to enable the jury to find him guilty or not guilty of an attempt to commit arson (no degree being specified).

We are unable to find that appellant excepted to the form of the verdict at the time the court furnished it to the jury or that he made any complaint at the time the verdict of guilty of the crime of attempt to commit arson was rendered by the jury and received by the court. Therefore, appellant's contention comes too late.

In *State v. Greer*, 11 Wash. 244, 39 Pac. 874, it was held by this court that, under similar circumstances, an objection to the form of the verdict cannot be considered in this court when no objection has been taken in the trial court before the verdict was filed. In the cited case we said upon this point:

"But the determination of this question is not necessary to the decision of this case, for the reason that the appellant is not in a position to raise it in this court. The transcript shows that at the time the verdict was received the defendant was in court with her counsel; that she made no objection to the form of the verdict, and took no exception to its being received by the court. Under these circumstances, it will be presumed in aid of the judgment that the

defendant consented to the verdict. If such verdict was received by her consent or request, she cannot successfully assign error on account thereof. The time has gone by when a defendant, even in a criminal case, can secure a reversal on appeal on account of a ruling by the trial court to which he at the time gave his consent."

■ Appellant's final claim of error is that the trial court erred in sentencing him for a maximum term of twenty years. While we are reversing the judgment for the reason hereinbefore stated, we realize that this question may arise upon the retrial of this case and, therefore, deem it proper to point out that, under the provisions of Rem. Rev. Stat. (Sup.), § 10249-2 [P.P.C. § 782-5], as construed in our decision in *State v. Seabrands*, 191 Wash. 472, 71 P. (2d) 393, the maximum sentence of twenty years is proper in the event of a conviction of the crime of attempted arson in the first degree. This statute was amended in 1947, but not in any respect material here.

Because of the improper cross-examination of appellant, the judgment is reversed and the cause remanded to the superior court with instructions to grant him a new trial.

SIMPSON, C. J., MALLERY, SCHWELLENBACH, and GRADY, JJ., concur.

---

March 4, 1950. Petition for rehearing denied.