[No. 37563.    Department Two.    August 26, 1965.]

C. A. TURPIN, *Appellant,* v. LOUIS DUNIS *et al., Respondents.*\*

*Robinson, Landerholm, Memovich & Lansverk,* for appellant.

*Mason & Foley* and *Maguire, Shields, Morrison, Bailey & Kester,* for respondents.

SHORETT, J.†—This appeal brings here for review a complicated land transaction in which the appellant Turpin was the promoter, the respondent Terry, the financier, and respondents Dunis and Urbin, investors, who lost $10,000 each.

The findings of the trial court, although challenged by appellant, are supported by substantial evidence. They indicate, without detailing the various negotiations and contracts involved, that an October 6, 1954, through Mr. Turpin's efforts and with money supplied by Terry, Dunis and Urban, the parties acquired a purchaser's interest in a large tract of land near Vancouver, Washington. Mr. Terry

\*Reported in 405 P.2d 239.

---

†Judge Shorett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

had interested Mr. Dunis and Mr. Urban in putting money into the transaction and a corporation named Suburban Properties, Inc., was formed, to which Turpin's and Terry's interest in the property was transferred. Stock was accordingly issued as follows: Turpin, 30 per cent; Terry, 20 per cent; Dunis, 20 per cent; Urban, 20 per cent; Stidd, 10 per cent. Mr. Turpin, as promoter, and Mr. Stidd, as real-estate operator, received their stock without cash payment. The other three paid $10,000 each, of which $28,000 was used for the original financing.

At first, it was contemplated that the tract of land could be quickly sold and a substantial profit realized. However, intensive efforts for more than 3½ years failed to produce buyers for the whole or any large part of the tract. The parties had considered attempting sales of individual lots, but before this could be done, considerable improvements had to be made and none of the parties wished to advance funds to the corporation to make this possible. During the more than 3 years, from October of 1954, to July of 1958, Terry was the financial angel of the corporation, advancing monthly payments of $350 on basic land contract, plus many other advances, so that, on July 3, 1958, when meetings of the shareholders and the board of directors were held, the corporation owed Terry a total of about $67,000. The corporation also owed 3 years delinquent real-estate taxes amounting to $5,241.08, which it was unable to pay.

With no prospects of any consequence for the sale of the property, Terry called special meetings of the shareholders and the board of directors for July 3, 1958 "for the purpose of considering and acting on problems regarding the Vancouver property." The notices were sent out only 6 days before the meeting.

Turpin was present at the shareholders' meeting and did not object to the lack of notice. Terry offered to buy the corporation assets for $75,000 (taking credit for the amount owing him on the purchase). With all the shareholders present, Turpin alone voted his 30 per cent against the deal —thus 70 per cent of the voting power approved the sale.

A board of directors' meeting was held immediately after the shareholders' meeting adjourned. Turpin participated in this meeting also and did not object to the inadequacy of notice. A majority of the board voted to approve the actions of the shareholders and sell the assets to Terry for $75,000. Three (Terry, Dunis and Urban) of the directors voted for the sale, with Turpin voting against it.

Appellant brought this action to rescind the conveyance. Appellant's assignments of error relate to the trial court's findings of fact, and certain conclusions of law. The significant findings relating to the sale are:

29. At the shareholders meeting on July 3, 1958 Terry explained in detail the problems in connection with the sale of individual lots and pointed out the necessity of expending substantial funds in order to improve the property by installing water lines, sewer lines, streets, curbs, and other utilities. At this time the only portion of the Burton Homes Tract which was subdivided was the Littler Homesites consisting of 10 or 12 acres, containing approximately 57 lots. Many of the lots in Littler Homesites were not merchantable because the street and water lines had not been installed on Littler Way which runs through the center of the subdivision. Terry did not advise the shareholders of a few pending sales that he had for some individual lots in the Littler Homesites Tract. This information was not material or significant because the shareholders had all determined that they would not invest any further funds to develop or improve the property.

30. Turpin, Louis Dunis, Frank Urban and L. C. Stidd each declined to invest or advance any further sums to Suburban Properties, Inc. to be used for the purpose of making improvements in the Burton Homes Tract so that individual lots could be sold or to invest any further funds to reimburse Terry for the sums which he had advanced to the corporation to pay off the Pappas-Turpin Agreement and other expenses of the corporation.

. . . .

43. The sale of the corporate assets of Suburban Properties, Inc. to Terry for $75,000.00 was made in good faith and for fair consideration. Turpin, Terry, L. C. Stidd and the other principals had been unable to sell the property after having made an honest attempt to do so from

October, 1954 to July 3, 1958. There were not any offers of any kind secured by Turpin, or any of the other parties for the purchase of the property from the corporation. The continuation of the business was no longer feasible. Suburban Properties, Inc. did not have funds with which to improve the property or to meet the liabilities of the corporation and the shareholders declined to either loan or invest funds for these purposes.

44. The reasonable value of the Burton Homes Tract as of July 3, 1958, based on its highest and best use at that time, did not exceed $75,250.00.

45. At the time the Burton Homes Tract was purchased by Terry from Suburban Properties, Inc., Terry offered to sell the property for the same price of $75,000.00 to Turpin or any purchaser whom Turpin could produce within a reasonable period of time.

Appellant assigns error to the trial court's finding that the Washington courts had no jurisdiction over respondents Dunis, Urban and Stidd. A decision on this question is unnecessary because of the result we reach on the other issues in the case.

Appellant Turpin contends that the notices of the shareholders' and board of directors' meetings of July 3, 1958, were not in proper form and that there was no waiver on his part of the defective notice. We first discuss appellant's contention with reference to the directors' meeting.

RCW 23.01.320 provides: "(5) A meeting of the board of directors may be called, as provided for in the bylaws of the corporation. . . ."

The bylaws relating to directors' meetings provided:

19. SPECIAL MEETINGS. Special meetings of the board may be called by the president on twenty-four hours' notice to each director, either personally or by telegram; special meeting shall be called by the president or secretary or other person in like manner and on like notice on the written request of two directors. *Whenever all directors attend a meeting on whatever date or place, all requirements for call and notice are deemed waived by all the directors, and their acts deemed valid, except where a director attends for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.* (Italics ours.)

Certain irregularities are evident, for the meeting was not "called by the president," nor was it called "on the written request of two directors." However, all directors did attend the meeting and there was no objection made that the meeting was not lawfully called or convened; in such case, the bylaws state notice is waived.

We think it unnecessary to decide whether the share-holders' meeting was properly called, because we are of the opinion the directors' meeting held following the share-holders' meeting had the authority to dispose of all the corporation's assets by virtue of RCW 23.01.390(2), which reads:

(2) If the corporation is able to meet its liabilities then matured, such authorization shall be given at a meeting of shareholders, duly called for the purpose, and by such vote of the shareholders as may be provided for in the articles of incorporation or, if there be no such specific provision, then by the vote of the holders of two-thirds of the voting power of all shareholders. *If the corporation be unable to meet its liabilities then matured, such authorization may be given by the vote of the board of directors.* (Italics ours.)

It is a general rule that boards of directors may sell all corporate assets, without shareholder approval when necessary to pay debts. Fletcher, Private Corporations § 546, p. 603 (Rev. ed. 1954); *Homan v. Fir Products Co.,* 123 Wash. 260, 212 Pac. 240 (1923).

The trial court found that "Turpin, Louis Dunis, Frank Urban and L. C. Stidd each declined to invest or advance any further money to Suburban Properties, Inc., to be used for the purpose of making improvements in the Burton Homes Tract so that individual lots could be sold . . ." and "Due to the financial condition of the corporation on July 3, 1958, it was not possible to borrow money to finance improvements of the Burton Homes Tract." and "The purpose for which Suburban Properties, Inc. had been formed, namely, the sale of the Burton Homes Tract within a reasonably short period of time had become impractical and was no longer feasible. It had not been possible to sell the

property as a unit or in large parcels. The corporation was unable to meet its obligations. None of the principals were interested in investing any further funds in the corporation so as to improve the property so that it could be sold in individual lots."

From the findings it is clear the corporation was insolvent, and the directors could sell all of the assets.

Under the facts found by the trial court, we have here a board of directors' meeting authorized to transact business, an insolvent corporation whose only asset is worth $75,250, an offer by the secretary of the company to buy for $75,000, and approval by three directors and disapproval by the fourth. Disregarding Terry's vote, there was a majority of disinterested directors voting for the sale.

■ As the trial court's findings show there was adequate consideration and no material concealment, this case is within the rules of strict conduct required of officers dealing with corporations. *Theis v. Spokane Falls Gas Light Co.,* 34 Wash. 23, 74 Pac. 1004 (1904); *Homan v. Fir Products Co., supra; State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.,* 64 Wn.2d 375, 391 P.2d 979 (1964).

Appellant also urges that the trial court erred (1) in admitting evidence regarding the understanding of interested parties that no further contributions would be expected to develop the property in variance of the terms of what is referred to as the Turpin-Terry contract, (2) in finding that Turpin and Terry were not joint venturers, (3) in excluding evidence that Terry had altered another corporation's records, and (4) in permitting respondents' appraisers to base their opinions of value on sales subsequent to July 3, 1958.

We have examined the arguments on all points and are of the opinion (1) the evidence relating to possible contributions to develop the property was admissible for a proper understanding of the background and attitudes of the parties at the time of the sale by the corporation to Terry; (2) whatever the Turpin and Terry relationship was prior to the organization of Suburban Properties, Inc., thereafter

they were directors and shareholders in the corporation and not joint venturers; (3) Terry could not be impeached on cross-examination by asking if he had altered another corporation's records (*State v. McVeigh*, 35 Wn.2d 493, 214 P.2d 165 (1950)); (4) comparable sales made after July 3, 1958, were properly considered by the appraisers (*Finch v. Grays Harbor Cy.*, 121 Wash. 486, 209 Pac. 833, 24 A.L.R. 644 (1922)). We find no merit in any of appellant's assignments of error.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

October 20, 1965. Petition for rehearing denied.