[No. 844. Decided July 31, 1893.]

WHATCOM COUNTY, *Respondent*, v. FAIRHAVEN LAND COMPANY, *Appellant*.

ACTION FOR DELINQUENT TAXES—INEQUALITY OF ASSESSMENT—
WHEN MAY BE RAISED—PLEADING—PARTIES—JUDGMENT.

In a proceeding under the revenue law of 1891 by the county to foreclose liens for delinquent taxes for the year 1890, the defendant may, under an order to show cause, establish by proof the unfairness and inequality of the assessment, without having alleged in his answer actual or constructive fraud on the part of the assessor; and, although the board of equalization has failed and refused to reduce the assessment, the defendant may, upon proof of over-valuation, have judgment by the court reducing the amount of his taxes.

A complaint for the foreclosure of tax liens which contains no allegation of ownership in the defendant of the property assessed, but merely a statement that the list appended is a list of registered unpaid taxes assessed to defendant, is sufficient as against a demurrer, when nothing appears on the face of the complaint to show that any other person is interested in the property as owner or otherwise.

The fact that parties to whom lands have been sold and conveyed have not been made defendants in an action to foreclose delinquent tax liens upon such lands, as required by the statute authorizing foreclosure, will not defeat the county's right to a decree, where the defendant named was the owner at the time of the assessment, and it is not shown that the deeds proved to have been executed were of record.

Although there is no personal obligation to pay taxes upon the grantor of lands conveyed prior to November 1st, of the year of as-

sessment, suit for taxes may be prosecuted against the grantor alone unless the grantee records his deed.

Where a great number of different tax liens are sought to be foreclosed in the same suit, because the property belongs to the same owner, judgment cannot be rendered against the defendant for the aggregate of all the taxes due, but the decree should be that each parcel be sold for a sum ascertained, including interest, penalties, costs and attorney's fee, the latter item to be charged upon a percentage of the recovery against each parcel.

*Appeal from Superior Court, Whatcom County.*

*Kerr & McCord,* and *H. Y. Thompson,* for appellant.

*Thomas G. Newman,* for respondent.

The opinion of the court was delivered by

STILES, J.— This was a proceeding to foreclose liens for taxes upon a large number of separate parcels of real estate, taken under the act of 1891 to cure defective titles to real estate and the general revenue law of the same year (Acts, pp. 166, 280). The taxes in controversy were those assessed for the year 1890.

Upon the return of the order to show cause, the appellant made it appear that the property assessed to it was of four classes: (1) Non-assessable tide lands; (2) lands which had no existence in fact; (3) lands which were of the actual value at the time of the assessment of $193,451, but which were assessed at the value of $409,081; (4) lands which had been conveyed by it to third parties since the assessment. The first two classes were stricken from the roll by order of the court, and there is no issue upon them.

As required by the court, appellant filed a sworn answer to the complaint of the county, and the evidence was taken before a referee. The answer set up as a defense to the taxes claimed upon the third class of lands that the appellant had appeared before the board of equalization and

demanded that its assessment upon this class of lands be reduced from the amount assessed to the actual value, but that no relief had been given and no order made in the premises, and that afterward, when the time for payment of taxes had arrived, it appeared before the same board as the board of county commissioners, and represented the facts, showing the excessive valuation and the illegality of the assessment, and that thereupon a compromise was made, and a settlement had of the whole matter of appellant's taxes, whereupon, and in pursuance of the agreement for a settlement and in full payment and discharge of its taxes, appellant paid to the treasurer of the county $24,-892.26, and took his receipt therefor. The payment thus made was based upon the values as admitted to be correct by the appellant.

Upon the hearing before the referee he found that the values of the appellant's lands of the third class were as claimed by it, but that it had failed to take advantage of the remedy provided by law in case of excessive valuation of property for taxation, and had thereby waived its right to object in this proceeding to the valuation as permitted to stand by the board of equalization; that is, it was estopped now to say that the values were other than those fixed by the assessor. Before the court, upon due exceptions by the appellant, the view of the referee was adopted in this particular, and the respondent had judgment. And herein lies the main issue in this case, viz., whether under the proceeding for the collection of delinquent taxes of former years, provided for in the two acts above mentioned, appellant was thus estopped.

There was some evidence in the case tending to show that the assessor had never made a legal assessment of these lands, but had merely set down arbitrary values in his office, without examination, inquiry or knowledge of the condition, situation or circumstances of the subject

matter. Town lots and blocks which, by reason of their being cut up by ravines, were far less valuable than others adjoining, were assessed at the same value; lots consisting of a narrow strip of upland, and the remainder tide flat, were assessed as all upland; property remote from desirable locations was put down at the highest value; and, as a whole, the error was made of assessing the property at more than double its actual value.

An arbitrary assessment of property without the exercise of the assessor's judgment, based upon knowledge or information, is an illegal assessment, and is a fraud upon the property owner, and may always be taken advantage of by the latter in some manner. But we do not think there was evidence sufficient in the case to establish the claim of constructive fraud, and shall decide it as merely one of palpably excessive over valuation.

In such a contingency, however, the respondent raises the point that tax laws do not generally afford any relief, except by appeal to a board of equalization, and that this particular law is not an exception to that rule. The proceedings subsequent to the work of the assessor were governed by the general revenue law of 1890 (Acts, p. 530), and § 73 of that act (p. 555) prescribes the powers of boards of equalization. The old revenue law (Code 1881, § 2877, as amended in 1886) provided that boards of equalization should have very full powers. They were to hear and determine all matters concerning assessments, and might subpœna witnesses, and raise or reduce all appraisements so as to make taxation equal and uniform, and there was a section reading as follows:

"SEC. 2879. During the session of the board for the equalization of taxes and the correction of the assessment roll, any person or his attorney or agent may attend and apply for the correction of any alleged error in the listing and valuation of his property, and a failure to so attend and apply shall bar said person from further recourse in

law, as to the valuation, but not as to error in description or to double assessment.''

But we look in vain for any of these provisions in the act of 1890. Every one of the board's duties is there put into mandatory language: (1) They *shall* examine and compare the returns of the assessment of property (not in the county but) of the several towns or districts, so that *all* property shall be entered at its true and fair value. (2) They *shall* raise the valuation of land which in their opinion is returned below its true and fair value — after two day's notice. (3) They *shall* reduce the valuation of land where in their opinion the assessment is too high; but nothing is said about an appearance or complaint by any person — it is their opinion which is to dictate the change. (4) *Upon complaint* they *shall* reduce the valuation of certain personal property. (5) But, most important of all, they shall *not* reduce the aggregate value of the property of their county below the aggregate value thereof as returned by the assessor, except for manifest errors in his valuation. The substance of the old § 2879 is entirely absent from this law; there is no power in the board to subpœna witnesses; and the authority to hear and determine is not expressed. The property owner is nowhere in this law invited to appear and make objections, if any he may have, until we reach § 105 (p. 568), where he is accorded the right to appear and set forth, by answer, the facts constituting his defense or objection to the tax and the penalties thereon, and by § 109 (p. 570) there can be no refuge in technicalities, nor any escape from the payment of a proper tax, but, if the lands ''have been partially, unfairly or unequally'' assessed, the court may reduce the amount of taxes, and give judgment accordingly.

Now, the answer in this case did not set up facts showing either actual or constructive fraud on the part of the assessor, and respondent claims that the pleading was

therefore insufficient to justify the argument which the appellant now urges, although it did allege facts showing an unfair assessment, and the evidence demonstrated both its unfairness and its inequality.   But this proceeding was not taken under the act of 1890 (p. 530), but under that of 1891 (Laws 1891, p. 280), which provides for an order to show cause why certain land should not be sold to pay registered taxes.   An answer by the taxpayer is proper enough under this law, although it is not as clearly required as under the law of 1890, but the cause is shown, not by the answer, but by the proof which is adduced; and the proof in this case, as the court below found, showed such an over valuation as ought not to be allowed to stand, for it was unfair because it was more than twice the actual value, and it was unequal because it was a great deal higher proportionately than the valuation of other similar property in the county.

This statute of 1890 seems to have been modeled upon the revenue law of the State of Minnesota, many sections of each law being in identically the same language.   The provisions concerning the county board of equalization and the method of collecting delinquent taxes by suit are the same.   Stat. Minn., 1878, chap. 11, §§ 44, 77, 79.   But it seems to have been overlooked by our legislature that in Minnesota the township system of local government exists (*Id.*, chap. 10), and that each township has its own assessor (*Id.*, §§ 14, 26); in cities the city assessor acts in all matters pertaining to assessment for county and state purposes (*Id.*, § 152), and in villages the taxes are levied and collected in the same manner as are township taxes (*Id.*, § 215).   By § 39, chap. 11, each town and city has its own board of equalization, which is authorized, upon the application of any person aggrieved, to review his assessment and correct the same as shall appear just; and the section concludes:

"All complaints and grievances of individuals, residents of the town or district, in reference to the assessment of personal property, shall be heard and decided by the town board: *Provided*, That the complaints of non-residents in reference to the assessment of any property, real or personal, and of others in reference to any assessment made after the meeting of the town board of review, shall be heard and determined by the county board."

Then comes the meeting of the county board, whose action is regulated in harmony with, and as a review of, the action of the township boards. But notwithstanding these provisions authorizing the owner of assessed property to appear before the town board, the supreme court of Minnesota, in numerous cases, before the adoption of our act of 1890, held that such cases as this one were cognizable by the courts, the owner not having been estopped. These cases are summed up and commented upon in *Otter Tail Co. v. Batchelder*, 47 Minn. 512 (50 N. W. Rep. 536).

Due process of law in the taking of private property requires notice and an opportunity to object and defend; and this requirement is met when the taxpayer is permitted to appear in court in response to a suit for the enforcement of a tax lien. *Davidson v. New Orleans*, 96 U. S. 97. Our constitution requires the legislature to provide by law for uniform and equal taxation according to value; art. 7, § 2; and whether there is such uniformity and equality according to value must be a judicial question the determination of which has probably been wisely arranged for by the method of foreclosure adopted in 1890. The cases cited to us from other states are not pertinent because they were not governed by like constitutional rules. This is notably so with the Illinois cases cited, for in that state the constitution, art. 9, § 1, requires the delegation of the whole power to ascertain the value of property for purposes of taxation to "some person or persons to be elected or appointed in such manner as the general assembly shall

direct, *and not otherwise.*" *Republic Life Ins. Co. v. Pollak*, 75 Ill. 292.

It follows that the appellant should have had judgment as to its lands in the third class.

2. The county attorney is authorized to bring suit to recover registered unpaid taxes, naming as defendants the owner, reputed owner, unknown owner, and all persons having recorded interests, estates or encumbrances; and he may include in one suit all parcels of land registered as belonging to the same owner. Acts of 1891, p. 318, § 101.

The county clerk, upon the commencement of the suit, must issue a summons, citation or notice, designating the owner, reputed owner or that the owner is unknown, which notice is to be in substantially the form given, and is to be served as in other civil actions. *Id.*, § 103. Whenever the owner is a non-resident of the county, or cannot be found therein, service of the summons may be made upon him by publication, except that when the owner is unknown or cannot be personally served, and the land is improved and there is an adult person residing thereon, the summons may be served upon him. *Id.*, § 104. And under § 105 "defendant" is the party recognized as the one who may make the defense. The complaint in this proceeding was entitled "The County of Whatcom *v.* The Fairhaven Land Company, and the real estate and improvements thereon hereinafter described, and to all persons who have a recorded legal or equitable interest therein or encumbrance thereon;" and in the body of the pleadings there was no allegation whatever as to the ownership, but merely a statement that the list appended was a list of registered unpaid taxes assessed to the appellant. To this complaint a demurrer was interposed for want of facts, by reason of the absence of an allegation of ownership. Appellant complains of the overruling of this demurrer. But we are not with appellant on this proposition, as we think the face of the complaint is sufficient, nothing appearing thereon

to show that any other person was interested in the property, as owner or otherwise. But by the answer it did appear (and the proofs in the case sustained the statement) that long before the commencement of this proceeding appellant had sold and conveyed all of the property included in the fourth class of lands to divers persons. This fact of conveyance might, perhaps, have been fatal to the proceedings as to this class of lands, inasmuch as the statute is explicit that all persons who have recorded interests, estates or encumbrances shall be named as parties defendant; and, if defendants, they must, under § 105, have the right to appear and show cause why their property should not be sold. But it was not shown that any of the deeds proved to have been executed and delivered were of record, and we are of opinion that the respondent was entitled to a decree, since the appellant was the owner at the time of the assessment. Of how much value such a decree may be, if in fact these deeds were of record, it is not for us to now determine. If it should turn out of no value because parties necessary under the statute to a final establishment of the lien and a sale were omitted, the appellant will not be harmed, since no personal judgment can be taken against it.

We think no importance is to be attached to the fact that § 110 regulates the relations of grantor and grantee as to payment of taxes. The personal obligation of a grantor to pay the taxes on land sold before November 1st, where there is a covenant against encumbrances, is by that section taken away; but the suit for taxes may be prosecuted against the grantor alone unless the grantee records his deed.

3. In entering the decree below we agree with the appellant that sufficient care was not taken to limit it to a sale of each parcel for its own tax, interest and penalties, and its just share of the costs of this proceeding. Where a great number of different tax liens are sought to be fore-

closed in the same suit, because the property belongs to the same owner, each demand upon each separate parcel continues a separate demand all the way through the case, and is enforcible only against the land.    No judgment should, therefore, have been rendered in this case against appellant for the aggregate of all the taxes due, and a gross attorney's fee of two hundred dollars; but the decree should be simply that each parcel should be sold for a sum ascertained, including interest, penalties, costs and attorney's fee, with accruing costs to be added in the manner provided for by the statute.    A schedule attached to the former decree perhaps accomplished substantially that; but the body of the decree rendered judgment in gross. As to the attorney's fees, we find upon examination of this statute that everywhere (with the exception of some charges for specific services, like the twenty-five cents for registration) penalties, etc., are charged upon a percentage, and we see no better way of apportioning the fee in this case than by assessing a percentage upon the recovery against each parcel.    It must be apportioned somehow, since it is not a personal charge against appellant, and no one parcel can be made to sustain the whole allowance.    The amount allowed in the new decree will be $100, to be apportioned as above.

We are unable to determine from the record, without great difficulty and loss of time, whether any of the lands included in the fourth class belonging to third parties were also included in the third class, upon which the assessment was excessive and the taxes were paid.    If there be any such, they will be excluded from the new decree of sale.

Cause remanded for a new decree in accordance with this opinion as of the date of the decree appealed from. Appellant to recover costs of the appeal.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.