[No. 12802.   Department One.   June 9, 1916.]

FIRST THOUGHT GOLD MINES, LIMITED, *Appellant*, v.
STEVENS COUNTY, *Respondent*.[1]

TAXATION—ASSESSMENT—MINING LANDS—OVERVALUATION—REDUC-
TION.   An assessment of 141.7 acres of mineral land for various years at $80,000 to $40,000 will be reduced as grossly inequitable and palpably excessive and hence constructively fraudulent, where it appears that the vein or lode of paying ore has either been completely exhausted or so hopelessly lost as to make the property not an operating mine but a mere prospect, with no paying ore in sight, while the assessment was based upon a value as an operating mine and its past performances, and that its fair value as a prospect did not exceed from $50,000 the first year to $10,000 for subsequent years.

Appeal from a judgment of the superior court for Stevens county, Jackson, J., entered October 2, 1914, in favor of the defendant, in an action for equitable relief, tried to the court.   Reversed.

*Jesseph & Bourland* and *F. Leo Grinstead,* for appellant.

*Howard W. Stull* and *Stull, Wentz & Bailey,* for respondent.

[1]Reported in 157 Pac. 1080.

ELLIS, J.—Action to cancel and set aside the assessed valuations placed upon plaintiff's gold and silver mining properties for the years 1909, 1910, 1911 and 1912, to require defendant county to accept an equitable amount as taxes for those years, and to cancel all tax liens and certificates against the property.

Plaintiff is the owner of 141.7 acres of mineral land, in Stevens county, having purchased the same in 1899 for between $25,000 and $30,000. From that time until 1906, it developed the property by digging tunnels, etc., and in the latter year began shipping ore to the smelters. The ore assayed an average of $15 or $16 a ton, and until the year ending June 1, 1910, yielded a profit. It was at all times uncertain, however, and no great amount of paying ore was ever known at any one time. After July, 1910, there were no further receipts from any smelters, and each year since then the operation of the mine and its maintenance has caused a deficit. It is clear that, at the present time, there is no paying ore in sight, and whether more will be discovered is purely speculative. The board of equalization, on the hearing on the application for a reduction in the assessed valuation, were advised of this condition and no one appeared before the board to testify that the land had any real value as mineral land. At the time of trial, about 6,700 tons of ore were piled up on the dump. This ran on an average between $3 and $4 a ton, which would not justify sending it to the smelter.

It is shown by the record that contiguous land of the same general nature as plaintiff's was assessed at a valuation of $4 to $10 an acre. Plaintiff's 141.7 acres was assessed as follows:

For the year 1909 ........................$80,200
          1910 ........................$80,000
          1911 ........................$80,000
          1912 ........................$40,000

The reduction of fifty per cent in the valuation placed upon the property in 1912 was made after the board of equalization had for the first time visited the property. The court made no findings, and entered judgment placing the following valuations on the property:

For the year 1909 ........................$80,200
            1910 ........................$60,000
            1911 ........................$40,000
            1912 ........................$40,000

Costs were awarded to neither party. Plaintiff appeals.

Appellant contends that the evidence not only warrants, but makes imperative, a much greater reduction than that made by the court, and that the property should be assessed the same as neighboring properties of the same general character, plus the value of the improvements. It is the established law in this state that courts will grant relief from a grossly inequitable and palpably excessive over-valuation of real property for taxation as constructively fraudulent, even though the assessing officers may have proceeded in good faith, and this without regard to the action of the board of equalization. *Whatcom County v. Fairhaven Land Co.*, 7 Wash. 101, 34 Pac. 563; *Benn v. Chehalis County*, 11 Wash. 134, 39 Pac. 365; *Knapp v. King County*, 17 Wash. 567, 50 Pac. 480; *Miller v. Pierce County*, 28 Wash. 110, 68 Pac. 358; *Henderson v. Pierce County*, 37 Wash. 201, 79 Pac. 617; *Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855; *Case v. San Juan County*, 59 Wash. 222, 109 Pac. 809; *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Northern Pac. R. Co. v. Pierce County*, 77 Wash. 315, 137 Pac. 433. Each case of this character must of necessity rest upon its own facts.

On the facts before us, we are satisfied that the assessments, even as reduced by the trial court, are still so excessive as to invoke the rule of the foregoing decisions. The evidence is overwhelming that the vein or lode of paying ore

has either been completely exhausted or is so hopelessly lost as to make the property not an operating mine but a mere prospect, and from the many unsuccessful efforts which have been made to find a further vein or lode bearing paying ore it would seem to be a somewhat discredited prospect. The uncontradicted evidence shows that, under present conditions, the ore would have to carry a value of from $12 to $13 a ton in order to bring a profit justifying operation of the mine; that at no time has there ever been a sufficient body of ore in sight to justify the erection of any kind of mill for the treatment of ore; that it costs approximately $4 to $4.75 a ton to mine the ore, and the cost of the shipping and treatment averages $6.24 per ton; that there is now practically no ore on the property, so far as many searches and assays show, which would yield over $4 or $5 a ton. During the fiscal year from June 1, 1908, to May 31, 1909, there was a net profit of less than $45,000. From June 1, 1909, to May 31, 1910, the mine yielded a profit of a little over $50,000. From June 1, 1910, to May 31, 1911, there was a loss of over $11,000. Since then there have been apparently no operations except drifting in search of paying veins or lodes, without success.

While we cannot agree with the appellant that this property is worth no more than neighboring property as farm land, we are satisfied that it cannot be justly valued as an operating mine, but only as a prospect. A reading of the record makes it too clear for argument that the assessing officers were influenced more by the past performance of this property as an operating mine than by its present worth as a prospect, which its performances down to date alone would justify. It is true we have no definite evidence as to what the value of this property is even considered as a mere prospect. The record, however, shows that, in the years 1903, 1904 and 1905, when the property was plainly nothing but a prospect, it was assessed at $10,000, and the taxes were paid, so far as the record shows, without complaint.

In the year 1909, as we have seen, the mine was a producing property. Its output in that year shows, however, that it was not worth $80,000. We think that a fair valuation for that year would be $50,000, and for the years 1910, 1911 and 1912, $10,000 each. To these valuations should be added the value of the improvements, which the evidence shows to be approximately $1,500.

The judgment is reversed, and the cause is remanded with direction to enter judgment in accordance herewith.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.