[No. 26445.  *En Banc.*  July 12, 1937.]

BELLINGHAM COMMUNITY HOTEL COMPANY, *Respondent,* v. WHATCOM COUNTY *et al., Appellants.*[1]

[1]Reported in 70 P. (2d) 301.

*H. W. Covalt* and *Frank W. Radley,* for appellants.

*Abrams & McCush,* for respondent.

MILLARD, J.—This action was instituted to obtain a reduction of the assessment on the Bellingham Hotel building for the years 1933, 1934, and 1935, and to recover an alleged excessive amount of taxes paid under protest on that building on the assessment for the years 1933 and 1934.

Finding that the fair, reasonable value of the property for assessment purposes should be reduced from $250,750 to $125,375 for the years 1934 and 1935, the trial court entered a decree in favor of the plaintiff. Defendants appealed.

We cannot agree with the contention of counsel for appellants that the respondent is not entitled to any relief upon the first half of the taxes paid for the year 1933. The basis of that contention is that the respondent entered into a contract November 8, 1934, with Whatcom county, to pay, in installments, delinquent taxes upon the property in question for the year 1932, and that, under the terms of that contract, respondent obligated itself to pay the first half of the 1933 taxes before delinquency when, as a matter of fact, the first half had not been paid until September 1, 1934, a time when it was already delinquent. It is insisted that, because of these facts, the first half of the taxes for 1933 must be deemed as having been paid without protest, and therefore cannot be considered in this action.

Paragraphs 4 and 5 of the contract provide that:

" . . . , whereas, said owner or contract holder desires to take advantage of the provisions of the said Chapter 53, Laws of 1933, as so amended;

"Now, THEREFORE, owner hereby agrees:

"First, to pay, before delinquency, the amount of

the current taxes upon said property . . . payable in the year 1934, . . ."

It should be borne in mind that at the time (November 8, 1934) this contract was made, no taxes for the year 1933 were delinquent, as the first half was paid under protest on September 1, 1934, and the last half would not become delinquent until December 1, 1934, which was subsequent to the date of the execution of the contract. This provision in the contract is authorized by the statute, under which the taxpayer agrees to pay, before delinquency, the amount of the current taxes upon the property payable in the year 1934, and refers to current taxes unpaid at the time the contract was executed; that is, the respondent agreed, as a condition to the execution of the contract, to pay the last half of the taxes for the year 1933 before they became delinquent. The first half of the taxes for the year 1933 had already been paid.

This view of the statute is supported by the further provision of the contract, which is authorized by Rem. Rev. Stat. (Sup.), § 11273-4a [P. C. § 6882-138½e] (Laws 1935, p. 555, § 5), reading as follows:

"The agreement shall become effective upon the signing thereof accompanied by the payment of one installment of delinquent taxes and interest, if any, and the payment of such portion of the current taxes as are then due and payable or delinquent."

As was aptly said in *Bellingham Dev. Co. v. Whatcom County,* 187 Wash. 15, 59 P. (2d) 920:

"The contract was entered into under the terms of statutes for the enforcement and collection of taxes which contain no assertion of waiver against a taxpayer upon his availing himself of the terms and policy of the statutes."

The next question is whether the trial court erred in finding that the assessment for the years in

question exceeded the actual, fair, and reasonable value of the property.

The statute (Rem. Rev. Stat., § 11135 [P. C. § 6882-52]) provides:

"All property shall be assessed fifty per cent of its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. . . ."

We have consistently construed this statute to mean that property shall be assessed at its fair market value at the time the assessment is made.

As we analyze, as did the trial court, the testimony of the witnesses in behalf of the appellants in arriving at the fair market value which would be used as a predicate for ascertaining the full cash value of the building, it appears that the factors considered by the witnesses, as well as the assessor, were the estimated cost of the reproduction of the building, less depreciation. It fairly appears that they did not take into consideration any other factors affecting its value, such as the rental or income which can be derived from the building.

The original cost of construction or the estimated cost of reproduction, less depreciation, may be considered, but only as an aid in arriving at the market value of the building. In valuing this hotel building for taxation purposes, the property should have been

considered with all of its burdens as well as its benefits.

"The testimony shows that the leasehold, measured by its burdens and benefits, has no real market value, but that relieved of its burdens and measured only by its benefits it is of large value. Counsel for the appellant framed his hypothetical questions so as to ask the witnesses 'to assume that there is no indebtedness against it,' meaning the leasehold interest. The assumption belies the facts. As we have stated, the state owns both the fee and the improvements subject only to the right of user in the respondent. The leasehold is burdened by a debt exceeding the value placed upon the lease by most of the witnesses. A purchaser of the lease would necessarily stand in the shoes of the respondent. He would take what it has with all its burdens, no more and no less." *Metropolitan Building Co. v. King County,* 72 Wash. 47, 129 Pac. 883.

The following language in the case of *Tampa v. Colgan,* 121 Fla. 218, 163 So. 577, is applicable to the facts in the case at bar:

" 'Under an ordinance of the City, all real and personal property is required to be assessed for purposes of taxation at its full cash value which is thereby defined as 50% of its fair market value. In arriving at the fair market value in this instance, to be used as a predicate for ascertaining the full cash value, it appears that the assessor used only the estimated cost of reproducing the building, less depreciation. He did not take into consideration any other factors affecting its value, such as location and surroundings, its character, its general utility, the rental or income which can be derived from it, and the probability of future development in the district where the property is located. This method of assessment was clearly erroneous. The original cost of construction or the estimated cost of reproduction, less depreciation, or, in other words, the structural value, of a building may

be considered, but only as an aid in arriving at the market value. It is not to be adopted as the sole or conclusive criterion of value. 61 C. J. p. 646; *People ex rel. Colgate Inn, Inc., v. Assessors of Town of Hamilton, Madison County*, 132 Misc. 506, 230 N. Y. S. 134. . . .'

"The method of ascertainment adopted by the City Tax Assessor in applying a valuation to the defendant's hotel was to calculate it almost entirely from an inflexible reproduction cost basis computed on a cubic foot price, after taking into consideration the physical condition of the improvement. Under such procedure the major factor considered was the cost of reproduction and the physical condition of the property. . . .

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied. *Claringbold v. Newark*, 5 Boyce (Del.) 507, 94 A. 1102, L. R. A. 1916E, 1101; *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 P. 1114, Ann. Cas. 1912C, 943; *Branson v. Bush*, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215; *Finch v. Grays Harbor County*, 121 Wash. 486, 209 P. 833, 24 A. L. R. 644; *Donovan v. City of Haverhill*, 247 Mass. 69, 141 N. E. 564, 30 A. L. R. 358. . . .

"While exact similarity between different properties is unusual, and tax assessors generally have to take many matters into consideration in determining the fair market value, the intrinsic value of property, for purposes of taxation, is to be determined by taking into account not one, but all, favorable and unfavorable circumstances that would control the admeasurement of its *present* value were it placed upon the market to be sold by the owner."

■ We said, in *Bellingham Dev. Co. v. Whatcom County*, 187 Wash. 15, 59 P. (2d) 920:

"The presumption, of course, is that the assessing officer has performed his duty in a proper manner, and

the rule is that evidence to overcome it must be clear and convincing. *First Thought Gold Mines v. Stevens County*, 91 Wash. 437, 157 Pac. 1080, states the rule as follows:

" 'It is the established law in this state that courts will grant relief from a grossly inequitable and palpably excessive over-valuation of real property for taxation as constructively fraudulent, even though the assessing officers may have proceeded in good faith, and this without regard to the action of the board of equalization. *Whatcom County v. Fairhaven Land Co.*, 7 Wash. 101, 34 Pac. 563; *Benn v. Chehalis County*, 11 Wash. 134, 39 Pac. 365; *Knapp v. King County*, 17 Wash. 567, 50 Pac. 480; *Miller v. Pierce County*, 28 Wash. 110, 68 Pac. 358; *Henderson v. Pierce County*, 37 Wash. 201, 79 Pac. 617; *Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855; *Case v. San Juan County*, 59 Wash. 222, 109 Pac. 809; *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Northern Pac. R. Co. v. Pierce County*, 77 Wash. 315, 137 Pac. 433. Each case of this character must of necessity rest upon its own facts.'

"Later cases to the same effect are *Bestman v. Snohomish County*, 169 Wash. 244, 13 P. (2d) 503, and cases therein cited.

"There is no fixed rule as to the disparity required between the assessed value and the value found by the court to establish constructive fraud.

"The testimony in the present case was more or less conflicting, the witnesses testifying in person in open court. To discuss the evidence by substantially setting it out, attempting to demonstrate the correctness of the trial court's findings and judgment, would be of no value. We think it sufficient to say in this respect that, upon consideration of all the evidence, we find that it clearly sustains the findings and judgment of the trial court that the assessment made by the county assessor is excessive to the extent of being constructively fraudulent."

We are convinced by our examination of the record that the evidence amply supports the trial court's find-

ing that the valuation placed upon the property grossly exceeded the actual, fair, and reasonable value of the property. Therefore, the judgment should be, and it is, affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and ROBINSON, JJ., concur.

BLAKE, J. (dissenting)—I do not think the assessed values as fixed by the assessor are in any sense exorbitant. And it is only when assessed values are so exorbitant as to indicate arbitrary or capricious action on the assessor's part that the court is warranted in stepping in and revising valuations. That the assessor may have proceeded on a fundamentally wrong basis is not sufficient ground for intervention, unless it results in an overvaluation which is palpably exorbitant and greatly disproportionate to valuations of property of like character in the same taxing district. *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553. In that case, the rule is stated as follows:

"Fraud on the part of the assessing officer may be presumed from a palpably excessive or exorbitant overvaluation. The court will grant relief for an arbitrary, fraudulent, or malicious excessive valuation by the assessing officer. Where the assessing officer has exercised an honest judgment, and no fraud or arbitrary or capricious action in making the assessment is shown or can be presumed, the court will not interfere. Where it appears that the assessing officer endeavored honestly to get at the true value, and there is an honest difference of opinion as to the value, the judgment of the officer is conclusive. If property, even if overvalued, is assessed in the same proportion as other like property within the jurisdiction of the assessing officer, and the system of valuation adopted operates equally on all other property, the constitutional provision as to uniformity of taxation is complied with."

Now, in the light of this rule, let us look at some of the undisputed facts in the case at bar. The court found that

". . . the full actual value of the property . . . as found by the assessor . . . for the years 1932 and 1933 was as follows: . . . making a total valuation upon the real property, including improvements, . . . for said years 1932 and 1933 in the amount of $273,225. That the full actual value . . . as found by the assessor . . . for the years 1934 and 1935, was as follows: . . . making a total valuation upon the real property, including improvements, . . . in the amount of $243,350."

The court further found that

". . . the taxing authorities . . . assessed for general taxation purposes for the years 1932 and 1933 the said land . . . and the improvements thereon . . . making a total assessed valuation of said real property, together with the improvements . . ., of $109,290. That . . . the taxing authorities . . . assessed for general taxation purposes for the years 1934 and 1935 the said land . . . and the improvements thereon . . . making a total assessed valuation of said real property, together with the improvements thereon, for said years 1934 and 1935 of $97,340."

The court then found:

"That the true and fair value . . . of the real property . . ., together with the improvements thereon for said years 1932 and 1933 [is] of $147,850. That the . . . total true reasonable and fair value of the real property . . ., together with the improvements thereon for the year 1934, [is] of $131,787.50."

Upon these bases of *actual value,* the court found:

"The *assessed valuation* of the said property of plaintiff in said years should be as follows:

```
1933,     Land..........................$ 8,990.00
          Improvements..................  50,150.00
```

making total assessed valuation of land
and improvements........................$59,140.00
```
1934,     Land..........................$ 8,090.00
          Improvements..................  44,625.00
```

making a total assessed valuation of land
and improvements........................$52,715.00"

Putting it simply, the court reduced the *assessed valuation* for the years 1932 and 1933 from $109,290 to $59,140; and for the years 1934 and 1935, from $97,340 to $52,715.

Now, what facts can be found in the record to warrant the court in so substituting its judgment for that of the assessor? To my mind, there are none. On the contrary, I think the undisputed facts justify the *actual* and *assessed* valuations fixed by the assessor.

The hotel building, erected in 1929, is a modern steel and concrete structure, fifteen stories in height, and containing one hundred forty-six guest rooms. The actual cost was in excess of $400,000. In December, 1929, the respondent floated a bond issue, secured by a first mortgage, in the amount of $250,000. (This was after the crash, when conservative investment bankers were floating bond issues on a basis of fifty per cent of market value.) March 1, 1932, respondent carried insurance on the property in excess of $300,000. In 1934, the amount of insurance carried was $228,000. While, of course, these figures are not conclusive as the "actual fair value" of the property, they are indicative of the valuation respondent's officers put upon the property for purposes other than taxation.

The property is operated under a lease containing rather unusual terms with respect to the rent reserved. The lessor covenants to pay taxes, assessments, insur-

ance premiums, interest and principal on outstanding bonds when due, and in addition seven per cent "on the par value of lessor's outstanding preferred and common stock." Prior to January 1, 1935, the lessee, pursuant to this covenant, paid in excess of $80,000; $15,890.90 being paid to the stockholders of the respondent company.

Under these facts, I do not see any ground for the court to intervene on the theory that the conduct of the assessor was so arbitrary and capricious as to amount to constructive fraud. On the contrary, taking all proper elements (cost less depreciation, mortgage loan valuations, insurance valuation and income) into consideration, it seems to me that the assessor came as nearly as any one possibly could to the "actual fair value" of the property for the basis of his assessed valuation.

I dissent.

MAIN, GERAGHTY, and TOLMAN, JJ., concur with BLAKE, J.