[No. 38841.    Department Two.    April 13, 1967.]

PIER 67, INC., *Respondent,* v. KING COUNTY *et al.,*
*Appellants.**

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for appellants.

*Robbins, Felix & Robbins* and *Jennings P. Felix,* for respondent.

*Reported in 426 P.2d 610.

DENNEY, J.†—This case involves the assessment by King County for tax purposes of certain improvements placed by plaintiff-respondent, Pier 67, Inc., on tidelands leased from the state of Washington, together with the assessment of furniture, machinery and other personal property located therein.

The trial court restrained the county assessor from pursuing his previous method of assessment of respondent's property, required a reassessment and transmittal of the new assessment to respondent, and left open to the latter the right to contest the new assessments. The trial court also retained jurisdiction to approve or disapprove the new assessment and to fix the amount of any refund of taxes paid under protest. King County appeals.

Respondent leased tidelands on Elliott Bay in Seattle from the state for a period of 30 years and proceeded to improve Pier 67 on such tidelands by constructing a motel known as Edgewater Inn for rental of lodging and other uses incidental thereto. Said motel buildings are permanent in nature and would be completely destroyed by their removal.

The assessor of King County assessed the improvements for the years 1964, 1965 and 1966 as personal property owned by respondent, using substantially a cost-when-new less depreciation basis. He refused to consider respondent's interest as a leasehold or to determine the value of the lease term by considering both its benefits and burdens, and refused to consider its income or lack of income.

The Edgewater Inn did not prosper but was operated at a substantial loss during the years 1963 through 1965. It is heavily mortgaged and has been kept in operation by loans guaranteed by individuals interested in the enterprise. Respondent's witnesses opined that the leasehold was valueless during the years in question because no informed person would pay anything for it.

Tidelands are owned by the state, Const. art. 17, § 1; and are exempt from taxation, Const. art. 7, § 1 (amendment 14).

---

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Personal property for purposes of taxation is defined by RCW 84.04.080 to include, *inter alia*: (1) all leases of real property and leasehold interests therein for a term less than the life of the holder, and (2) all improvements upon lands the fee of which is still vested in the United States, or in the state of Washington. The lease in this case is for a term of 30 years—less than the life of the holder, a corporation with perpetual existence. From the definition of personal property, appellant contends the assessor had an option to value respondent's property as a leasehold for a term less than the life of the holder *or* as improvements upon lands the fee of which is vested in the state of Washington. Appellant's contention that the assessor may value respondent's property as improvements on state land is bottomed on his assertion that the improvements are the property of the respondent. We do not agree.

■ The lease does not provide that the improvements are to be the property of the lessee. In the absence of such a provision buildings permanently erected on real property become a part of the realty as soon as constructed. In the case of *Murray v. Odman,* 1 Wn.2d 481, 485, 96 P.2d 489 (1939), we said: "At the outset, it may be stated, that, since there was no agreement to the contrary, the building became, during the course of its erection, a part of the land." See also *Toellner v. McGinnis,* 55 Wash. 430, 104 Pac. 641, (1909).

■ Furthermore, the trial court entered the following finding of fact: ". . . The said buildings and improvements are permanent in nature and they would be completely destroyed by their removal which would seriously damage the realty. The improvements became, as erected, a part of the realty." Thereafter, the court drew the following conclusion of law: "The improvements are owned by the state of Washington and the plaintiff has only an equity therein. . . ." Appellant has assigned error to neither of the above. An unchallenged finding of fact becomes the law of the case, and on appeal is to be treated as a verity. Rule on Appeal 43, RCW vol. 0; *York v. Cooper,* 60 Wn.2d 283,

373 P.2d 493 (1962). It is clear, therefore, that the improvements became a part of the tidelands and the property of the state.

█ On four different occasions this court has determined the proper valuation for tax purposes of improvements made by a lessee on state land. These decisions have become known as the *Metropolitan Bldg. Co.* cases. The Metropolitan Building Company leased the old university campus in downtown Seattle, owned by the state of Washington, for a period of 50 years and improved the property by the construction of large office buildings, financing the same by the issuance of bonds. The buildings became the property of the state. During the first years after construction the investment was not profitable and the building company lost large sums of money. King County contended that the value of the improvements for tax purposes should be measured by the amount of investment. This court held that the property must be valued as a leasehold, and that such value is the value of the term less rent reserved and that the assessor must consider the burdens as well as the benefits in setting such assessed value. The first case, *Metropolitan Bldg. Co. v. King Cy.*, 62 Wash. 409, 410, 113 Pac. 1114 (1911), held that:

> We are bound by the statute, therefore, to determine the value of the leasehold as personal property. In determining the worth of the leasehold the courts have universally held that it is the value of the term less the rent reserved. The value of the term is fixed with reference to present as well as prospective conditions; not speculative, but actual; or, to state the proposition more aptly, its value in money to one who desires to sell but who is under no necessity for selling, and to one who is desirous of buying but is under no compulsion to do so.
>
> . . . .
>
> . . . Therefore, an assessment based upon the value of the improvements or the amount invested therein was erroneous, and entitles respondent to relief.

In the second case, *Metropolitan Bldg. Co. v. King Cy.* 64 Wash. 615, 117 Pac. 495 (1911), the tax for 1910 was involved. This court followed the first *Metropolitan Bldg. Co.*

case and held that the lease must be valued with its burdens as well as its benefits and that an assessment based on value of improvements could not stand.

The third case, *Metropolitan Bldg. Co. v. King Cy.*, 72 Wash. 47, 129 Pac. 883 (1913), involved assessments for 1911. In affirming the trial court and in answer to a contention that only the benefits of the lease should be considered the court said:

> The testimony shows that the leasehold, measured by its burdens and benefits, has no real market value, but that relieved of its burdens and measured only by its benefits it is of large value. Counsel for the appellant framed his hypothetical questions so as to ask the witnesses "to assume that there is no indebtedness against it," meaning the leasehold interest. The assumption belies the facts. As we have stated, the state owns both the fee and the improvements subject only to the right of user in the respondent. The leasehold is burdened by a debt exceeding the value placed upon the lease by most of the witnesses. A purchaser of the lease would necessarily stand in the shoes of the respondent. He would take what it has with all its burdens, no more and no less. We had supposed that the former appeals fixed the standard of estimating the value.
>
> . . . .
>
> . . . The situation has not changed. The law of common honesty applies to the taxing power with the same force it applies to an individual. To approve the equalized value would be virtual spoliation. We say here, as we have said before, that the value of the leasehold interest is to be measured both by its burdens and its benefits. It cannot be otherwise.

Appellant contends that the provision of RCW 84.04.080 that "no deduction shall hereafter be made or allowed on account of any indebtedness owed" forbids consideration in any manner of mortgage indebtedness in determining valuation for tax purposes. This provision, however, was in effect when the *Metropolitan Bldg. Co.* cases were decided. In the last *Metropolitan Bldg. Co.* case, *In re Metropolitan Bldg. Co.*, 144 Wash. 469, 476, 258 Pac. 473 (1927), we considered this question and said:

It makes no difference whether respondent improves its property with its own capital or borrows the money for that purpose, securing the loan by a mortgage or trust deed on the leasehold. The leasehold must be improved to make it productive and profitable, and presumably the better it is improved, the more profitable it will prove to be. The improvements become the property of the state as and when made, and the leaseholder, before any profit can be figured, must provide by some plan of amortization for the return of the money invested in the improvements, together with reasonable interest thereon during the time it is so invested. This is all it claims or was credited with, and it can make no difference whether the money so returned goes into the pockets of the stockholders to reimburse them for their advances, or to the bondholders to pay back the money loaned.

The holdings in the *Metropolitan Bldg. Co.* cases are confirmed by RCW 84.40.030, which provides that "taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash." Respondent had a leasehold interest which must be valued for taxation purposes as such. The *Metropolitan Bldg. Co.* cases so hold and we are not inclined to depart from the principles announced in those cases.

RCW 79.01.548 provides that in event the lessee of tidelands from the state shall not re-lease said tidelands upon expiration of the lease, the Commissoner of Public Lands shall appraise and determine the value of all improvements which are not capable of removal and in case such tidelands are leased or sold to other than the lessee within 3 years from expiration of the former lease, the bid of the subsequent lessee or purchaser shall not be accepted until payment is made of the appraised value to the former lessee. The statute further provides that in event such tidelands are not sold or leased within 3 years such improvements shall be considered a part of the land and shall be sold or leased with the land.

■ Appellant contends that under this statute the lessee acquires an interest in the improvements which the assessor must value as property of such lessee. RCW

79.01.548 does not deal with ownership of improvements nor with the assessment of improvements on state-owned land. It deals only with the right of the lessee to recover the appraised value of improvements in event such lessee does not exercise his right to re-lease the land. If such improvements are not sold or re-leased during such 3 year period the lessee receives nothing for his investment. The lessee has at most an equity upon which he may or may not realize depending upon whether the tidelands are again leased or sold by the state within the statutory period. Appellant's contention is without merit.

The second facet of this case involves the assessment of the furniture, fixtures and inventory in the Edgewater Inn. In making his evaluation the assessor commenced with the report made by respondent to him pursuant to RCW 84.40.040 and 84.40.050, which sets out $718,436.82 as the cost new of such furniture, fixtures and inventory. The assessor then allowed depreciation according to a schedule to approximately $600,000 and divided by 3, thus arriving at an assessed valuation of $199,730. Testimony indicated other properties in King County were generally assessed at 25 per cent of market value. It is evident that the assessor gave no consideration to actual market value, nor did the county offer any evidence of market value on the assessment dates. The only evidence of market value came from respondent's president who set it at $150,000 as of January 1, 1964 and $130,000 as of January 1, 1965. It was further shown that respondent's statement of cost new included substantial interest and finance charges which cannot under any theory be considered a proper consideration in determining value for taxation purposes.

█ It is the established law of this state that courts will grant relief from a grossly inequitable and palpably excessive overvaluation of property for taxation as constructively fraudulent, even though the assessing officer may have proceeded in good faith, and this without regard to any action of the board of equalization. *Whatcom Cy. v. Fairhaven Land Co.*, 7 Wash. 101, 34 Pac. 563 (1893); *Northern Pac. Ry. v. Pierce Cy.*, 77 Wash. 315, 137 Pac. 433

(1914); *Bellingham Dev. Co. v. Whatcom Cy.*, 187 Wash. 15, 59 P.2d 920 (1936); *Bellingham Community Hotel Co. v. Whatcom Cy.*, 190 Wash. 609, 615, 70 P.2d 301 (1937).

If the true value of the furniture, fixtures and inventory was $150,000, it is obvious that an assessment based on a value of almost $600,000 is inequitable and palpably excessive and therefore constructively fraudulent. The findings of the trial court are supported by substantial evidence and therefore we will not interfere with such findings. *Kueckelhan v. Federal Old Line Ins. Co., (Mut.)*, 69 Wn.2d 392, 418 P.2d 443 (1966); *Ferguson v. McBride*, 69 Wn.2d 35, 416 P.2d 464 (1966).

The judgment of the trial court is affirmed.

FINLEY, C. J., DONWORTH, HUNTER, and HAMILTON, JJ., concur.

September 11, 1967. Petition for rehearing denied.