[No. 42826.    En Banc.    December 20, 1973.]

LINDA M. HANSON *et al., Respondents,* v. R. W. HUTT, *Appellant.*

*Slade Gorton, Attorney General, Joseph M. Littlemore* and *Alan R. Krebs, Assistants,* for appellant.

*Stephen M. Randels* and *Christopher E. Young* (of *Peterson, Bracelin, Creech & Young*), for respondents.

*Slade Gorton, Attorney General, Winslow Whitman, Assistant,* and *William Rives* and *Elihu Hurwitz,* amici curiae.

STAFFORD, J.—During 1970 and 1971 respondents filed applications for unemployment insurance benefits. Each was found to be eligible and began receiving payments. Later, each woman became pregnant and either was denied fur-

ther benefits under RCW 50.20.030[1] or was assessed for alleged overpayments pursuant to RCW 50.20.190, 50.20.070.

In August 1971, respondent Hanson commenced a class action in the Superior Court for King County challenging the constitutionality of the proviso of RCW 50.20.030. She was, however, directed to exhaust her administrative remedies first. The cases of all respondents were consolidated for hearing before the appeals tribunal of the Department of Employment Security (hereafter Department). The decision of the appeals tribunal, as amended by the Department's Commissioner (appellant herein), denied benefits to all respondents pursuant to RCW 50.20.030. Respondents appealed to the Superior Court for King County pursuant to RCW 34.04.130 and 50.32.120. At each stage they reiterated their request for class relief.

The trial court held that RCW 50.20.030 violates the Equal Protection Clause of the fourteenth amendment to the Constitution of the United States and the Privileges and Immunities Clause of the Washington State Constitution. As a result, it reversed appellant's decision denying respondents' claims for benefits as well as those assessing overpayments against certain of the respondents pursuant to RCW 50.20.190 and 50.20.070. Further, the court ordered that class relief be granted to all women similarly situated if the Department finds that they would have been eligible but for the disqualification contained in RCW 50.20.030. Finally, the trial court concluded it was unnecessary to determine whether the challenged statute violates the

---

[1]"50.20.030 Pregnancy limitation. A woman who voluntarily quits work because of pregnancy shall be disqualified from benefits for the week in which she quits and thereafter through the terminal week of her pregnancy: *Provided, however,* That in any event a pregnant woman shall be disqualified from receiving benefits for any calendar week during the period beginning with the seventeenth calendar week immediately preceding the expected date of confinement, as determined by a doctor, and extending through the sixth calendar week immediately following the week in which childbirth occurs."

This statute was amended by Laws of 1973, 1st Ex. Sess., ch. 167, § 2. Constitutionality of the amended version is not before us in this case.

Equal Rights Amendment (article 31 of the state constitution).

Although appellant has made numerous assignments of error, they are concerned with two central issues: (1) the constitutionality of RCW 50.20.030, and (2) the granting of class relief.

Initially, it must be noted that appellant has not assigned error to the trial court's refusal to rule on the impact of the Equal Rights Amendment on RCW 50.20.030. Further, respondents have not cross-appealed. Therefore, we shall not consider this issue. ROA I-43.

### I. CONSTITUTIONALITY OF RCW 50.20.030

First, it is necessary to determine whether RCW 50.20.030 discriminates on the basis of sex. Appellant argues that a classification based on pregnancy does not constitute sex discrimination. Although the cases cited by appellant appear to conclude that such a classification is neither an *unreasonable* nor an *invidious* discrimination based on sex, they have avoided the underlying question, *i.e.*, whether it is in fact discriminatory.

While it is oversimplistic, it is true that only women become pregnant. It is equally clear that only women must remain barren to be eligible for and to receive unemployment compensation. This requirement of RCW 50.20.030 not only applies to only one sex but places a heavier burden upon women who seek unemployment benefits. We hold that the statute discriminates against women on the basis of sex. *See Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 299 A.2d 277 (1973); *LaFleur v. Cleveland Bd. of Educ.*, 465 F.2d 1184 (6th Cir. 1972); *Buckley v. Coyle Pub. School Sys.*, 476 F.2d 92 (10th Cir. 1973); *Heath v. Westerville Bd. of Educ.*, 345 F. Supp. 501 (S.D. Ohio 1972).

Having concluded that RCW 50.20.030 is discriminatory on the basis of sex, we must next determine the standard by which to measure it. Appellant contends that " 'if any state of facts reasonably may be conceived to justify it,' "

the statute should be upheld, citing *Dandridge v. Williams,* 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970), and *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 503 P.2d 460 (1972). We do not agree that the foregoing rule is applicable here.

Within the framework of the Equal Protection Clause of the Fourteenth Amendment, both federal and state courts have begun to give more careful scrutiny to legislative attempts at sexual discrimination. *Reed v. Reed,* 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971); *See also Mollere v. Southeastern La. College,* 304 F. Supp. 826 (E.D. La. 1969); *Gates v. Foley,* 247 So. 2d 40 (Fla. 1971). In *Sail'er Inn, Inc. v. Kirby,* 5 Cal. 3d 1, 18-20, 485 P.2d 529, 95 Cal. Rptr. 329 (1971), the California Supreme Court declared sex to be a suspect classification.

> An analysis of classifications which the Supreme Court has previously designated as suspect reveals why sex is properly placed among them. . . .
> Sex, like race and lineage, is an immutable trait, a status into which the class members are locked by the accident of birth. What differentiates sex from nonsuspect statuses, such as intelligence or physical disability, and aligns it with the recognized suspect classifications is that the characteristic frequently bears no relation to ability to perform or contribute to society. . . . The result is that the whole class is relegated to an inferior legal status without regard to the capabilities or characteristics of its individual members. . . . Where the relation between characteristic and evil to be prevented is so tenuous, courts must look closely at classifications based on that characteristic lest outdated social stereotypes result in invidious laws or practices.
>
> . . .
> Laws which disable women from full participation in the political, business and economic arenas are often characterized as "protective" and beneficial. Those same laws applied to racial or ethnic minorities would readily be recognized as invidious and impermissible. The pedestal upon which women have been placed has all too often, upon closer inspection, been revealed as a cage.

Most recently, the United States Supreme Court held

unconstitutional federal statutes which provided different standards for the recovery of a military dependent's support payments based upon the dependent's sex. *Frontiero v. Richardson*, 411 U.S. 677, 688, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973).[2]

In *Frontiero* four justices expressly found that "classifications based upon sex . . . are inherently suspect, and must therefore be subjected to strict judicial scrutiny." They found "at least implicit support for such an approach" in *Reed v. Reed, supra*. Mr. Justice Stewart concurred in the *Frontiero* judgment, agreeing that the statutes in question worked an invidious discrimination. Three other justices agreed that the statutes constituted an unconstitutional discrimination against servicewomen. They did not feel, however, that it was necessary or proper to hold that classifications based upon sex are inherently suspect. They reasoned that since the Equal Rights Amendment is presently before the various state legislatures for adoption, the Supreme Court should defer categorizing sex classifications as suspect, pending an expression of the will of the people.[3]

The Equal Protection Clause of the Fourteenth Amendment and the Privileges and Immunities Clause of the Washington State Constitution are substantially identical in their impact upon state legislation. *State v. Perrigoue*, 81 Wn.2d 640, 503 P.2d 1063 (1972); *Olsen v. Delmore*, 48

---

[2]In *Frontiero v. Richardson*, 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973), appellants actually asserted that the challenged statutes discriminated on the basis of sex in violation of the Due Process Clause of the Fifth Amendment to the federal constitution. They pointed out that first, as a procedural matter, a female is required to demonstrate her spouse's dependency while a male has no such burden; and second, a male member of the service who does not produce one-half of his wife's support is eligible for benefits, whereas a similarly situated female member is denied benefits. Concerning the action brought under the Fifth Amendment, the majority commented in footnote 5, at page 680: " '[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' "

[3]The voters of this state approved the Equal Rights Amendment and it became article 31 of the Washington State Constitution on December 7, 1972.

Wn.2d 545, 295 P.2d 324 (1956). With all of the foregoing considerations in mind, we hold that the classification based upon sex, contained in RCW 50.20.030, is inherently suspect and therefore must be subject to strict judicial scrutiny.

Appellant has attempted to justify the statutory classification by asserting that pregnant women are not genuinely attached to the labor market. To the contrary, however, all five doctors who testified at the Commissioner's hearing concluded that 90 percent of pregnant women do not suffer from medical conditions that would impair their ability to continue working in their normal occupation. They also testified that most women can return to their jobs between 5 days and 4 weeks after delivery, the exact time depending on the individual woman. There is ample evidence to support the trial court's finding that pregnant women are attached to the labor market and that there is no medical basis in fact for their disqualification.

Appellant argues that employers are reluctant to hire women in the latter stages of pregnancy. However, the attitude of potential employers is not an appropriate rationale to use as a basis for disqualifying a class of claimant for unemployment insurance. RCW 50.20.010 sets forth the conditions a claimant must meet to be eligible for unemployment compensation. None refers to employer attitude. Rather, a claimant must show that

he is able to work, and is available for work in any trade, occupation, profession, or business for which he is reasonably fitted. To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work pursuant to customary trade practices and through other methods when so directed by the commissioner or his agents;

RCW 50.20.010(3).

Next, appellant urges that pregnant women cause or contribute to their own unemployment by the voluntary act of becoming pregnant. Assuming arguendo that pregnancy is voluntary, this does not mean that unemployment resulting

therefrom is necessarily voluntary. While a woman may wish to become pregnant, she may not, and often does not, wish to become unemployed as a result thereof.

Since there does not appear to be a compelling state interest to justify the discriminatory provisions of RCW 50.20.030, it must fall as violative of the Equal Protection Clause of the federal constitution and the Privileges and Immunities Clause of the state constitution.

## II. CLASS RELIEF

Appellant's assignments of error make a two-pronged attack on the propriety of granting class relief. First, it is argued that this is an action against the state which can be brought only in Thurston County, citing RCW 4.92.010. Thus, it is urged that the Superior Court for King County lacked jurisdiction to grant the class relief provided in CR 23. Second, appellant asserts that such relief is not available under RCW 34.04.130.

■ Insofar as the first point is concerned, appellant relies on *Deaconess Hosp. v. State Highway Comm'n*, 66 Wn.2d 378, 403 P.2d 54 (1965) and *Say v. Smith*, 5 Wn. App. 677, 491 P.2d 687 (1971). Both cases are clearly distinguishable, since neither involves the constitutionality of a statute. We have held that when the constitutionality of a statute is challenged the action is not one against the state; rather, it is one against the named defendant individually and therefore need not be brought in Thurston County. *State ex rel. Robinson v. Superior Court*, 181 Wash. 541, 43 P.2d 993 (1935); *Wiegardt v. Brennan*, 192 Wash. 529, 73 P.2d 1330 (1937).

Turning to the second point, appellant concedes that the trial court had jurisdiction over the claims of the six respondents by virtue of RCW 34.04.130. It is argued, however, that the court could not consider class relief because the members of the class had not been "aggrieved by a final decision in a contested case." Appellant would apparently deny relief to members of the class because they have not filed timely appeals and therefore are barred under

RCW 50.20.160. In the instant case, however, his position is not well taken.

Before an appeal may be taken, a claimant must receive a written notice of denial. RCW 50.20.180. In this regard, the trial court specifically found that the Department failed to inform claimants that they were required to continue reporting during the disqualification period in order to receive a formal determination from which an appeal could lie. In addition, the Department caused claimants to conclude that further claims for benefits were pointless or unnecessary. The trial court went on to find the existence of a class of women who were disqualified in the past without having received an official notice of the reasons for disqualification and without having been advised by the Department of their right to claim these benefits and to appeal the Department's denial of their claims. Appellant has assigned no error to these findings of fact. Thus, we must accept them as verities. ROA I-43; *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967). Appellant also has assigned no error to the trial court's finding that all four of the prerequisites to maintaining a class action have been met. Further, a review of the record makes it clear that there is ample evidence to support the trial court's determination that appellant has acted on grounds generally applicable to the class, thereby bringing into play CR 23(b)(2) making it appropriate to grant final relief to the class as a whole.

RCW 50.20.160(4) authorizes appellant to make redeterminations of eligibility for unemployment insurance to conform with final court decisions pertaining to all persons who may be found by him to be interested parties. The trial court found, however, that the appellant indicated he would not exercise his authority and thus found that "[b]ecause the [appellant] has indicated that said authority will not be exercised on behalf of the class of similarly situated persons identified by the court . . . the court feels compelled to extend class relief pursuant to CR 23." Appellant has not assigned error to the foregoing finding

204

and it too becomes a verity. *Pier 67, Inc. v. King County, supra.* Inasmuch as the appellant had statutory authority to redetermine and rectify any errors having an impact upon the class of similarly situated persons identified by the court, and since he chose not to use that authority, we agree that the trial court proceeded properly under the circumstances.

█ The trial court made its decision as to the class retroactive to the earliest date any named petitioner was denied benefits as a result of the challenged statute. On the other hand, appellant contends that if class relief is granted, it should be applied only prospectively from May 14, 1973, the date of the trial court judgment. Whether class relief should be applied retroactively falls within the sound discretion of the trial court. *Robinson v. Hackney,* 307 F. Supp. 1249 (S.D. Tex. 1969). We find no abuse of discretion.

On May 18, 1972, petitioners made application with the appeals tribunal of the Department for leave to proceed as a class action. This put the Commissioner on notice that petitioners sought relief for all pregnant women who had been denied benefits because of the pregnancy limitation contained in RCW 50.20.030.

█ While retroactive class relief will be denied if it places an undue financial burden upon the state (*Bryson v. Burson,* 308 F. Supp. 1170 (N.D. Ga. 1969); *Begay v. Graham,* 18 Ariz. App. 336, 501 P.2d 964 (1972)), there has not been a sufficient showing of such a financial burden here. The record indicates that in 1971 some 1,668 pregnant women were disqualified under the challenged statute. The record does not show, however, and we have no way of knowing, how many of these women were justifiably disqualified because they voluntarily quit work, or because they were unable to work, or because they were not seeking work, or for any other reasons for which a claimant may not be qualified under RCW 50.20.010. Some women may have been issued a formal notice of determination from which they could have appealed but failed to do so; if

so, they would not be entitled to retroactive benefits of the trial court's judgment.

Class relief should be extended to those who were improperly denied benefits under RCW 50.20.030. It shall, however, apply only for "overpayments" received and retroactive claims made upon benefits accruing during or after the first week in which benefits were denied to the respondents herein. In summary, we affirm the decision of the trial court.

It is necessary that members of the foregoing class be informed of their possible entitlement to file a claim or for redetermination of an individual claim. Thus, the cause is remanded to the trial court for the purpose of instructing appellant as to the type and form of notice to be issued to the members of the class.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.